**Abraham LOUDERMILL and Joyce Loudermill, et al., Appellees,**

**v.**

**The DOW CHEMICAL COMPANY, Appellant.**

**v.**

**M–P CONSTRUCTION COMPANY, INC., Appellee.**

No. 88–1011.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 19, 1988.

Decided Dec. 9, 1988.

---

Alan D. Harrel, Texarkana, Tex., for appellant.

Randolph C. Jackson, Fort Smith, Ark., for appellees.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The Dow Chemical Company appeals, and the estate and heirs of the deceased Abraham Loudermill cross-appeal, from a judgment entered on a jury verdict in favor of Loudermill's wife and minor children. Loudermill was exposed to certain chemicals on Dow's premises, which the jury found eventually led to his death. For reversal, Dow first makes three arguments with respect to the expert testimony of Dr. William T. Lowry, a toxicologist and medical school instructor. Dow argues that Dr. Lowry did not possess the proper qualifications to offer expert testimony as to the effects of Loudermill's exposure to the chemicals, that Dr. Lowry could not offer opinions as to medical probability since he is not a medical doctor, and that Dr. Lowry's opinions were based entirely upon speculation and conjecture. Dow further

claims that the magistrate[1] should have granted two motions for directed verdicts, and that the magistrate erred in granting a motion for summary judgment in favor of Loudermill's former employer, the M–P Construction Company, on Dow's third party contribution claim. In their cross-appeal, the estate and heirs of Loudermill argue that they are entitled to a new trial on damages alone, and that they should have been awarded prejudgment interest. We are not persuaded by any of the above arguments, and we affirm the judgment of the district court.[2]

## I.

This diversity action was originally brought by Loudermill directly, and upon his death his estate and heirs were substituted as parties plaintiff. Loudermill worked for the M–P Construction Company, which contracted to perform certain services at Dow's plant in Magnolia, Arkansas. The plaintiffs claimed that Loudermill's death, by cirrhosis of the liver, was a direct result of his exposure at the Magnolia plant to DBCP (dibromochloropropane), a primary ingredient in Dow's agricultural chemical Fumazone. All parties consented to the case being heard before the United States Magistrate.

At trial, the expert opinion testimony of Dr. William T. Lowry, a toxicologist with doctoral degrees in toxicology and chemistry, but not in medicine, established causation between the chemical exposure and Loudermill's injuries. Adding to evidence already in the record that DBCP could have toxic effects on the liver, Dr. Lowry stated that he believed DBCP actually did fatally damage Loudermill's liver. Dr. Lowry's testimony was received over strenuous objection by Dow.

Dr. Lowry's credentials were extensive. He was chief of the regulated substances section of the Southwestern Institute of Forensic Sciences, and an associate professor of clinical pathology at the University of Texas Southwestern Medical School. He was on the consulting attending staff for emergencies at the Parkland Hospital toxicology department, and for twelve years with that hospital was involved in autopsies to determine clinical or toxicological related events in death. He had also served as a consulting toxicologist for both the United States Environmental Protection Agency and the Dallas Public Health Department.

Nevertheless, Dr. Lowry admitted during Dow's witness voir dire that he was not specifically familiar with the relationship between halogenated hydrocarbons, such as DBCP, and liver toxicity. Dow used this statement to object to Dr. Lowry's expert qualifications. Dow also objected to Dr. Lowry's use of the phrase "high medical probability," since Dr. Lowry was not a medical doctor, and to his testimony as a whole on the basis that it was supported by no facts to causally connect DBCP and liver injury, and was therefore entirely speculative and conjectural. The magistrate overruled these objections.

At the close of plaintiffs evidence Dow made two motions for directed verdicts. First, it argued that the evidence could not possibly establish that Loudermill was a business invitee under Arkansas law. Second, Dow contended that in any event punitive damages should not be awarded, since the record contained no evidence from which to infer malice. The magistrate denied both motions. The jury returned a verdict in favor of Loudermill's wife and two minor children, awarding compensatory damages of $90,000 and punitive damages of $25,000. The magistrate then made an additur to the estate for funeral and medical expenses. Both parties appealed to the district court.

The district court held that the magistrate did not abuse his discretion in allowing Dr. Lowry to testify as an expert. The court stated that Dr. Lowry was sufficiently knowledgeable to be helpful to the jury, and that although he lacked a medical de-

---

1. The Honorable Ned A. Stewart, Jr., United States Magistrate for the Western District of Arkansas.

2. The Honorable Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

gree, he was qualified to testify as to medical probabilities. Finally, the court remarked that it was for the jury to evaluate Dr. Lowry's credibility.

In addition, the district court ruled that the plaintiffs presented sufficient evidence to support submission of the business invitee and punitive damage theories. The Dow employees testified that DBCP odor was regularly detected in the areas where Loudermill worked, and that open cans of DBCP waste were dumped at the site where Loudermill dumped trash. Some employees also stated that the DBCP smell was noticeable as far away as the employee parking lot. Other evidence showed that existence of a noticeable DBCP odor is a strong indication of over-exposure to the chemical. The district court held that this was sufficient to send the question to the jury. It also found enough evidence to allow the inference that Dow's behavior was wanton and in conscious disregard of known dangers to its employees. The district court did agree with Dow that prejudgment interest on the award was not warranted. With regard to the cross-appeal, the district court refused to grant a new trial for damages. It therefore completely affirmed the magistrate, except to strike the award of prejudgment interest.

Meanwhile, in a bifurcated hearing Dow's claim against the M–P Construction Company for indemnification was the subject of cross motions for summary judgment. The magistrate denied Dow's motion, and granted M–P's motion. This action was also affirmed by the district court.

## II.

Dow's objections to the admission of Dr. Lowry's testimony must be examined under an abuse of discretion standard, since trial courts traditionally enjoy wide latitude in accepting or rejecting expert testimony. *See, e.g., WSM, Inc. v. Hilton*, 724 F.2d 1320, 1328 (8th Cir.1984). The Federal Rules of Evidence provide that expert opinion testimony should be allowed if it will assist the trier of fact to "understand the evidence or to determine a fact in issue * * *." Fed.R.Evid. 702. Our preliminary inquiry must therefore be whether Dr. Lowry's testimony sufficiently assisted the jury to justify the magistrate's decision to allow admission. This question necessarily requires an examination of Dr. Lowry's qualifications.

■ Close scrutiny of the record shows that although Dr. Lowry's credentials are not unassailable in the specific area of the relationship between halogenated hydrocarbons and liver injury, the magistrate operated well within the bounds of his discretion in allowing Dr. Lowry to testify as an expert. Without extensively listing all of Dr. Lowry's credentials, we observe that he possessed considerable academic and practical knowledge in the field of toxicology. He had earned advanced degrees in toxicology, served as a consultant on a hospital staff, assisted various governmental agencies, and taught at a medical school. Dow concedes that Dr. Lowry is an expert in some areas, but advances the narrow argument that Dr. Lowry should not have been allowed to testify as to Loudermill's injuries caused by exposure to halogenated hydrocarbons such as DBCP, because Dr. Lowry admitted that he had never done research in this specific area. We are not convinced.

"The relative skill or knowledge of an expert goes to the weight of that witness's testimony, not its admissibility." *Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723, 728 (8th Cir.1985). Dr. Lowry's knowledge of toxicology and the liver is sufficient to persuade us that the magistrate did not abuse his discretion in permitting the testimony, which undoubtedly assisted the trier of fact. Dow's arguments as to Dr. Lowry's shortcomings in research experience were properly developed in cross-examination and closing arguments to the jury. The record shows that Dow thoroughly cross-examined Dr. Lowry on the subject of his credentials, and so the jury was able to consider this when weighing Dr. Lowry's testimony.

■ Dow next argues that Dr. Lowry should not have been permitted to testify as to the "high medical probability" of the

cause of Loudermill's cirrhosis of the liver. It is true that laymen cannot give opinion as to the causes of disease and death. *See, e.g., Charleston Nat'l Bank v. Hennessy,* 404 F.2d 539 (5th Cir.1968). Nevertheless, Dr. Lowry testified concerning his extensive experience and work in hospitals, that involved preparing information in a scientific context to be relied on by the medical profession. Many complex medical issues involve a mixture of pure scientific knowledge and medical research, learning, and experience. The record makes clear the extent of Dr. Lowry's knowledge and its limitations. The district court found:

> Although Dr. Lowry is not a medical doctor, he is an expert in toxicology. He has had substantial experience in the performance of autopsies as a toxicologist consultant, determining clinical or toxicological related events in death. Therefore, the Court finds that based upon his education and experience Dr. Lowry is an expert, thus, qualified to offer his opinion as to Loudermill's cause of death.

*Loudermill v. Dow Chemical Co.,* No. CA–83–1165, slip op. at 6 (W.D.Ark. Aug. 7, 1986). The district court went on to conclude that Rule 702 of the Federal Rules of Evidence had been satisfied by this testimony. We are not convinced that the magistrate abused his discretion in admitting this evidence or that the district court erred in its approval of the admission of this evidence. The jury was well aware that Dr. Lowry was not a medical doctor, but that he was a PhD with scientific training. The weight and value of Dr. Lowry's testimony was for the jury to evaluate. The testimony was, however, sufficient to cross the threshold of admissibility.

▆▆▆ Dow's final allegation of error involving the admission of the expert testimony is but a variation on the theme of the others. Dow argues that even if Dr. Lowry was qualified to testify as an expert, his opinion was insufficiently supported by facts, and thus rested entirely upon speculation and conjecture. As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. *See Twin City Plaza, Inc. v. Central Surety & Ins. Corp.,* 409 F.2d 1195, 1203 (8th Cir.1969); *see also United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir.1988). However, if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury, then the testimony should not be admitted. *See Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987). Dow contends that Dr. Lowry's testimony belongs in the latter category.

There was no abuse of discretion. As the district court stated, Dr. Lowry's testimony was based on consultation of relevant data. He examined microscopic specimen slides, pathology and autopsy reports, government records, and publications concerning liver injuries caused by halogenated hydrocarbons. Again, while Dr. Lowry's opinions may have been subject to attack, as they indeed were, such issues go to credibility, not admissibility. The jury evaluated the credibility of all evidence, and we will not disturb this result.

### III.

Dow's next set of arguments center on the denial of two motions for directed verdicts, on the business invitee and punitive damages theories. As we have often stated:

> A motion for directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions.... In making this determination, the evidence, together with all reasonable inferences therefrom, must be viewed in the light most favorable to the nonmoving party.

*Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375 (8th Cir.1983) (quoting *Giordano v. Lee,* 434 F.2d 1227, 1231 (8th Cir.1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971)). We believe that enough evidence was presented to properly send both issues to the jury.

▆▆▆ This court has previously acknowledged the business invitee concept in Arkansas law, observing that property own-

ers who hire independent contractors to work on their land must exercise ordinary care not to harm them. *See McMichael v. United States,* 751 F.2d 303, 308 (8th Cir. 1985); *see also Gordon v. Matson,* 246 Ark. 533, 536, 439 S.W.2d 627, 629 (1969). Although conflicting evidence was offered, the jury could reasonably have concluded that this duty was breached. Witnesses spoke of DBCP odor in the plant, and evidence was shown that this smell indicated concentrations of 1000 times the safe level. Further, evidence was introduced indicating that Loudermill's duties required him to be in areas where DBCP was present, including a waste dump where DBCP was regularly deposited. Dr. Lowry testified regarding the effects of DBCP on the human body. This evidence was sufficient to support the jury's verdict.

 Dow's arguments concerning punitive damages fail for similar reasons. For punitive damages to be awarded under Arkansas law, the plaintiffs must show malice, either express or inferred. Inferred malice requires that the defendant knew or should have known of the potential harm, but proceeded anyway with conscious indifference to the possibility of injury. *See Freeman v. Anderson,* 279 Ark. 282, 286–87, 651 S.W.2d 450, 452 (1983); *Dalrymple v. Fields,* 276 Ark. 185, 188, 633 S.W.2d 362, 363 (1982). Witnesses testified at trial that Dow knew of the dangers of DBCP as early as 1961, and yet did nothing. Open cans of DBCP were dumped in open waste pits, and the smell of the chemical was repeatedly detected in the plant. Dow took no precautions to protect its employees. This evidence was sufficient to justify submitting the punitive damages issue to the jury.

### IV.

 Dow's final argument is that the magistrate erred in granting summary judgment to the M–P Construction Company on Dow's indemnification claim. The magistrate granted this motion even though a 1965 contract between the two parties stated that M–P, as a contractor, would assume all responsibility for injuries to its employees while they were on Dow's property. The magistrate found, however, that the 1965 contract dealt with construction work, and that Loudermill was not performing work under that contract when his injuries occurred. "A motion for summary judgment may be granted only if an examination of all the evidence in a light most favorable to the nonmoving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence." *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir.1987) (citations omitted). Dow offered nothing on the indemnity claim, however, except the contract which the magistrate found inapplicable. The magistrate and district judge were correct in ruling that this is not sufficient to create a genuine issue as to law or material fact.

### V.

 Finally, the Loudermills cross-appeal seeking a new trial on damages alone, and a reversal of the district court decision to deny prejudgment interest. The decision of the magistrate to deny a new damages trial was not, however, an abuse of discretion. Additionally, Arkansas law denies prejudgment interest in damages actions when the economic value of the loss in question is not determinable at the time of loss. *See Bank of Mulberry v. Fireman's Fund Ins. Co.,* 720 F.2d 501, 503 (8th Cir.1983); *Lovell v. Marianna Federal Savings & Loan Ass'n,* 267 Ark. 164, 167, 589 S.W.2d 577, 578 (1979). The district court correctly applied this Arkansas rule.

We affirm the judgment of the district court.