# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1906

_____

Carol Marmo,                                    *
                                                *
            Appellant,                          *
                                                *
v.                                              *
                                                *
Tyson Fresh Meats, Inc.,                        *
f/k/a IBP, Inc.,                                *
                                                *
            Appellee.                           *

_____

No. 05-3649                          Appeals from the United States
                                     District Court for the District of
_____                         Nebraska

Carol Marmo,                                    *
                                                *
            Appellant,                          *
                                                *
v.                                              *
                                                *
Tyson Fresh Meats, Inc.,                        *
f/k/a IBP, Inc.,                                *
                                                *
            Appellee.                           *

_____

Submitted: March 17, 2006
Filed: August 3, 2006

_____

Before ARNOLD and SMITH, Circuit Judges, and MAGNUSON,[1] District Judge.
_____

MAGNUSON, District Judge.

Carol Marmo appeals from the final judgment entered on a jury verdict awarding her $17,500.00 on a nuisance claim against Tyson Fresh Meats, Inc., f/k/a IBP, Inc. ("IBP"). She also appeals the subsequent award of costs. We affirm.

**BACKGROUND**

Marmo commenced this action in the District Court of Dakota County, Nebraska, in September 2000. IBP timely removed the case to the United States District Court for the District of Nebraska.[2] The case was consolidated for discovery and pretrial purposes with twelve similar cases, but each case is to be tried individually. This is the first, and thus far only, case to proceed to trial.

The complaint alleged three theories of recovery: nuisance, negligence, and strict liability. In each claim, Marmo asserted that she had been damaged by hydrogen sulfide gas emitted from the wastewater treatment lagoons at IBP's beef processing plant. Marmo later attempted to amend the complaint to add an unjust enrichment claim based on a pollution easement theory. Specifically, Marmo claimed that IBP inequitably saved $70 million by not installing appropriate pollution control equipment. The district court rejected the proposed amendment as futile, concluding that the unjust enrichment claim based on the facts presented was a novel cause of action that the Nebraska courts had not recognized.

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

The initial progression order established a staggered schedule for expert witness disclosures. The order required Marmo to submit her expert disclosures first, followed by IBP's expert disclosures. Thereafter, either party could disclose additional expert witnesses if "necessary to refute the disclosed opinions of any expert witness of an opponent." (Marmo App. in Appeal No. 05-1906 at 77.) The order was amended numerous times to provide both parties extensions to the disclosure deadlines.

In March 2002, Marmo submitted disclosures for seven expert witnesses, including Dr. Kaye Kilburn, a physician who examined Marmo, and Dr. Harriet Ammann, a toxicologist. IBP disclosed its expert witnesses on various dates between August and November 2002. Marmo disclosed several rebuttal experts, including Dr. William Meggs, in April 2004.

In May 2004, IBP moved to strike several of Marmo's rebuttal witnesses, including Dr. Meggs, on the ground that their opinions offered replacement, and not rebuttal, testimony. In opposition to the motion, Marmo asserted that "the rebuttal reports . . . disclose quintessential rebuttal testimony" and that Dr. Meggs's reports were "classic rebuttal testimony." (IBP App. in Appeal No. 05-1906 at 94, 96.) The magistrate judge denied the motion to strike without prejudice, deferring the issue until trial.

In November 2004, IBP filed motions in limine to exclude the testimony of Dr. Kilburn and to preclude Dr. Ammann from offering an opinion on medical causation. In response, Marmo withdrew Dr. Kilburn as a witness for her case-in-chief and moved to re-designate Dr. Meggs as a primary witness. The district court denied the motion to re-designate, finding that modification of the progression order was not supported by good cause and would have substantially prejudiced IBP. The district court also ruled that Dr. Ammann was not qualified to testify on medical causation.

3

IBP moved for partial summary judgment on the strict liability and negligence claims, as well as on the issue of permanent physical injury. The district court granted summary judgment on the strict liability claim, finding that IBP did not engage in an ultrahazardous activity in the operation of its wastewater treatment facility. The district court also granted summary judgment on the physical injury issue, reasoning that Marmo could not present necessary medical causation evidence, in light of the denial of re-designation and the in limine ruling relating to Dr. Ammann. However, the district court denied summary judgment on the negligence claim, concluding that issues of fact remained concerning when the applicable four-year limitations period commenced.

Trial occurred in February 2005. During opening statements, IBP's counsel remarked that no physician would testify about Marmo and her health. The next day, Marmo objected to the statement, arguing that it created a false inference that no medical evidence existed to support her claims. To rebut the inference, Marmo requested that Dr. Meggs testify in her case-in-chief or that she elicit testimony from IBP's experts. The district court denied the request. Thereafter, Marmo attempted to call Dr. Meggs as a rebuttal expert. However, the district court refused to allow Dr. Meggs to testify, reasoning that IBP had presented no evidence for Dr. Meggs to rebut.

During trial, Marmo admitted that she was aware in the early 1990s of her alleged difficulties with hydrogen sulfide and linked her symptoms to emissions from IBP. Accordingly, the district court granted a directed verdict for IBP on Marmo's negligence claim, finding that the statute of limitations had run well before Marmo filed suit in September 2000.

Marmo's nuisance claim for the four-year period preceeding September 2000 was submitted to the jury, which returned a verdict of $17,500.00 for Marmo. The district court then awarded Marmo $23,006.56 in costs.

4

**DISCUSSION**

**A.     Denial of Leave to Amend to Add an Unjust Enrichment Claim**

Marmo sought leave to amend her complaint to add an unjust enrichment claim based on the theory that IBP unjustly profited from its failure to install adequate pollution control equipment.  The district court denied leave, reasoning that the attempt was futile because Nebraska law did not recognize an unjust enrichment claim based on the theory advanced by Marmo.

A district court should grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a).  However, denial of leave to amend may be justified when the amendment is futile.  United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557-58 (8th Cir. 2006) (citing United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001)).  Although we review a denial of leave to amend for an abuse of discretion, we review de novo the underlying legal conclusion of whether the proposed amendment to the complaint would have been futile.  Id. at 555 (citations omitted).

An unjust enrichment claim embodies the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another.[3]  Hoffman v. Reinke Mfg. Co., 416 N.W.2d 216, 219 (Neb. 1987) (citing Haggard Drilling, Inc. v. Greene, 236 N.W.2d 841, 845 (1975)).  When the inequitable and unconscionable retention of a benefit occurs, Nebraska law requires the recipient to pay for the

_____

[3] Courts recognize unjust enrichment claims "when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay."  66 Am. Jur. 2d Restitution & Implied Contracts § 9 (2001).  Unjust enrichment implies a contract so that a party may recover damages from the benefitted party.  Id. Unlike an express contract, intent is irrelevant.  Id. at §§ 2-5.

reasonable value of the benefit received.  Bush v. Kramer, 173 N.W.2d 367, 369 (1969).  "Unjust enrichment requires restitution, which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain." Trieweiler v. Sears, 689 N.W.2d 807, 834 (Neb. 2004) (citations omitted). Thus, a defendant will be liable for the unjust benefit it receives — and not the harm sustained by the plaintiff. Id. at 834-35 (citation omitted).

Marmo admits that neither the Nebraska Supreme Court nor the Nebraska Legislature has recognized an unjust enrichment claim based on a pollution easement theory, but nonetheless argues that Nebraska case law supports her claim. Nebraska courts have recognized an unjust enrichment claim to allow a purchaser who made valuable improvements to a property to recover the reasonable value of the improvement.  See McIntosh v. Borchers, 266 N.W.2d 200, 203 (Neb. 1978).  They have also recognized an unjust enrichment claim to require payment for land use when an individual disavowed an obligation to pay for the use.  Bush, 173 N.W.2d at 369.

However, no Nebraska state court has recognized a negative unjust enrichment claim based on the pollution easement theory, which seeks disgorgement of profits unjustly saved by a polluter.[4]  Rather, Nebraska courts focus on how the pollution

---

[4] The theory is not entirely novel, as other jurisdictions have recognized it.  See Branch v. Mobil Oil Corp., 778 F. Supp. 35, 35-36 (W.D. Okla. 1991); N.C. Corff P'ship, Ltd. v. Oxy USA, Inc., 929 P.2d 288, 295 (Okla. Ct. App. 1996); Evans v. City of Johnstown, 410 N.Y.S.2d 199, 205-07 (N.Y. Sup. Ct. 1978); see also generally Allan Kanner, Unjust Enrichment in Environmental Litigation, 20 J. Envtl. L. & Litig. 111 (2005).  Indeed, since we heard oral argument in this case, another district court from the District of Nebraska ruled that Nebraska law supports such a claim.  Schwan v. CNH Am. LLC, No. 4:04CV3384, 2006 WL 1215395, at *34 (D. Neb. May 4, 2006).  Notably, however, the district court in Schwan relied heavily on Oklahoma law — not Nebraska law.  Id.  Nebraska courts have not interpreted unjust enrichment claims so broadly as to include the pollution easement theory.

injures the plaintiff, and that claim is properly brought under the law of nuisance. <u>See</u> <u>Bargmann v. Soll Oil Co.</u>, 574 N.W.2d 478, 486 (Neb. 1998); <u>Karpisek v. Cather &</u> <u>Sons Constr., Inc.</u>, 117 N.W.2d 322, 326-27 (Neb. 1962). There is no indication that the Nebraska Supreme Court would recognize an unjust enrichment claim on the facts of this case. Thus, the proposed amendment would have been futile, and the district court did not err in denying Marmo leave to amend the complaint.

**B.      Dismissal of the Negligence Claim**

The district court found that Marmo learned of the irritant effects of hydrogen sulfide and linked her symptoms with the emissions from IBP by November 1994. Because Marmo did not commence her action until September 2000, the district court directed a verdict on the negligence claim, finding it barred by the statute of limitations.

We review the grant of a motion for directed verdict de novo. <u>Randall v.</u> <u>Federated Retail Holdings, Inc.</u>, 429 F.3d 784, 787 (8th Cir. 2005) (citations omitted). A directed verdict is appropriate "if during a trial by jury a party has been heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." <u>Id.</u> (quoting Fed. R. Civ. P. 50(a)(1)).

Under Nebraska law, a four-year statute of limitations applies to negligence claims. <u>See</u> Neb. Rev. Stat. § 25-207(3). The statute of limitations in a negligence action generally commences when the injurious act or omission occurs. <u>Carruth v.</u> <u>State</u>, 712 N.W.2d 575, 580 (Neb. 2006). Thus, the limitations period runs from the date that the injured individual has the right to commence an action, even if the individual is ignorant about whether a cause of action exists or is unaware of the nature or extent of the damage. <u>Cavanaugh v. City of Omaha</u>, 580 N.W.2d 541, 544-45 (Neb. 1998).

7

Marmo maintains that IBP repeatedly breached its duty to exercise due care in operating its facility and that the district court erred by failing to apply the continuous tort doctrine to her negligence claim. Nebraska recognizes the continuing treatment doctrine, which provides that the limitations period in medical malpractice claims runs from the date on which a continuing course of treatment ends, even if the injury was inflicted earlier in the course of treatment. Carruth, 712 N.W.2d at 580. However, Nebraska courts refuse to extend the continuous tort doctrine beyond the medical malpractice context. See Anonymous v. St. John Lutheran Church of Seward, 703 N.W.2d 918, 925 (Neb. Ct. App. 2005) (refusing to apply continuing tort doctrine to negligence cause of action); see also Grand Island Sch. Dist. No. 2 v. Celotex Corp., 279 N.W.2d 603, 608 (Neb. 1979) (no continuous injury despite repeated failures to repair negligently installed roof). Moreover, the policy considerations underlying the continuing treatment doctrine do not apply in this case. See Casey v. Levine, 621 N.W.2d 482, 487-88 (Neb. 2001) (primary considerations underlying the continuing treatment doctrine are to allow a physician an opportunity to correct any malpractice and not disrupt the physician-patient relationship) (citations omitted). Accordingly, the district court properly refused to apply the continuous tort doctrine and appropriately directed a verdict on the negligence claim.

## C.    Expert Witnesses

The district court granted IBP partial summary judgment because Marmo failed to proffer admissible expert testimony to demonstrate causation with regard to permanent physical injury. Initially, Marmo identified Dr. Kilburn as an expert to render an opinion on medical causation. However, after IBP filed a motion in limine challenging the reliability of Dr. Kilburn's opinion and a summary judgment motion on permanent physical injury, Marmo withdrew Dr. Kilburn as an expert. Thereafter, Marmo proffered the testimony of both Dr. Ammann and Dr. Meggs, but the district court ruled that neither expert could testify on causation.

We review evidentiary rulings for an abuse of discretion, according such decisions substantial deference. Morgan v. United Parcel Serv. of Am., Inc., 380 F.3d 459, 467 (8th Cir. 2004) (citation omitted); Life Plus Int'l v. Brown, 317 F.3d 799, 803 (8th Cir. 2003) (citation omitted).

1.    Dr. Ammann

The district court allowed Dr. Ammann to testify that Marmo's alleged injuries were "consistent with" hydrogen sulfide exposure, but precluded Dr. Ammann from opining on causation. Marmo submits that the district court improperly limited Dr. Ammann's testimony.

District courts must ensure that all scientific testimony is both reliable and relevant. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 580 (1993); Fed. R. Evid. 702. The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-57 (8th Cir. 2000).

To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. Daubert, 509 U.S. at 589-90. To show that the expert testimony is relevant, the proponent must show that the reasoning or methodology in question is applied properly to the facts in issue. Id. at 591-93. Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. Clark v.

Heidrick, 150 F.3d 912, 915 (8th Cir. 1998); see also Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991) (noting that Rule 702 "is one of admissibility rather than exclusion"). However, a court should not admit opinion evidence that "is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded. Id.

We have previously held that a toxicologist may testify that exposure to a chemical caused a person's symptoms and injuries. Bonner v. ISP Techs., Inc., 259 F.3d 924, 928-31 (8th Cir. 2001); Loudermill v. Dow Chem. Co., 863 F.2d 566, 569-70 (8th Cir. 1988); see also Reference Manual on Scientific Evidence 401-31 (2d ed. 2000) (recognizing that toxicologists may offer expert opinions on whether exposure to a chemical caused an individual's injury). However, neither Bonner nor Loudermill provides a blanket rule that toxicologists are qualified to render an opinion on causation. Rather, under the circumstances of each case, we found that the opinion of each toxicologist was reliable. In Bonner, we emphasized that the causation opinion on the plaintiff's immediate, acute symptoms was reliable because of the temporal connection between the exposure and the symptoms. 259 F.3d at 930-31. In Loudermill, we noted that the expert had considerable academic and practical knowledge, including clinical experience examining patients and conducting autopsies to determine toxicological related events in death. 863 F.2d at 568-70.

In this case, Dr. Ammann interviewed Marmo but did not examine her and did not inquire about other toxic exposures. See Reference Manual on Scientific Evidence, supra, at 427 ("One of the basic and most useful tools in diagnosis . . . of disease is the patient's medical history. . . . [I]t is widely recognized that a thorough medical history involves questioning and examination of the patient as well as appropriate medical testing."). Moreover, Dr. Ammann did not exclude confounding factors, which "leaves open the possibility of competing causes of the disease" and raises questions about the competency of expert testimony. Id. at 428-29. Finally, Dr.

Ammann admitted that the causation standard she employed was not subject to expression in terms of a potential rate of error and was a much lower standard than medical causation. Because of these analytical flaws, the district court acted within the bounds of discretion when precluding Dr. Ammann from testifying on medical causation.

## 2. Dr. Meggs

The district court refused to allow Marmo to call Dr. Meggs as a witness in her case-in-chief and later ruled that Dr. Meggs could not testify as a rebuttal witness. Marmo challenges these rulings on several grounds.

First, Marmo argues that the progression order did not dictate the presentation of evidence at trial. To ensure that trial does not proceed higgledy-piggledy, the district court has wide discretion to determine the order in which parties adduce proof. Geders v. United States, 425 U.S. 80, 86 (1976). Under the terms of the progression order, Marmo disclosed Dr. Meggs as an expert witness "necessary to refute the disclosed opinions" of IBP's expert witness. The district court properly construed Dr. Meggs as a rebuttal witness. See Black's Law Dictionary 1295 (8th ed.) (defining "rebut" as "to refute, oppose, or counteract (something) by evidence, argument, or contrary proof"). Indeed, Marmo described Dr. Meggs as providing "classic" rebuttal testimony.

"The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005) (citation omitted); Faigin v. Kelly, 184 F.3d 67, 85 (1st Cir. 1999) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case.") (citations omitted). As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent — and not to establish a case-in-chief. Cates v. Sears, Roebuck & Co., 928 F.2d 679, 685 (5th Cir.

11

1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."); see also John Henry Wigmore, Evidence in Trials at Common Law § 1873 (1976) (a district court should allow rebuttal evidence only if it is necessary to refute the opponent's case).

The district court reasonably construed the progression order as dictating both the timing and substantive nature of expert witness testimony, and it was well within its discretion to rule that witnesses disclosed as rebuttal witnesses under the progression order would testify as rebuttal witnesses at trial. To construe the order otherwise would eviscerate the distinction between primary and rebuttal witnesses.

Second, Marmo argues that the district court abused its discretion in refusing to re-designate Dr. Meggs as a witness in her case-in-chief. Marmo identified Dr. Meggs as an expert witness in April 2004, two years after the deadline to disclose primary witnesses and after IBP had filed its motion in limine challenging the admissibility of Dr. Kilburn and its summary judgment motion based on lack of admissible evidence on causation. The district court refused to re-designate Dr. Meggs because Marmo failed to show good cause to modify the progression order.

Adherence to progression order deadlines is critical to achieving the primary goal of the judiciary: "to serve the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; see also Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) ("As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them.") (citation omitted). Accordingly, the district court has broad discretion in establishing and enforcing the deadlines. Fed. R. Civ. P. 16, 37. To modify a progression order, a party must show good cause for the modification. Bradford, 249 F.3d at 809. To establish good cause, a party must show its diligence in attempting to meet the progression order. Id. (citation omitted). A district court may also

consider the existence or degree of prejudice to the party opposing the modification. Id.

Marmo had ample opportunity to develop her expert testimony on the causation issue. She chose to keep Dr. Kilburn as the primary witness on that issue for over two years while litigation proceeded, attempting to re-designate Dr. Meggs only after withdrawing Dr. Kilburn. The tactical decision to withdraw Dr. Kilburn in response to a motion challenging his opinion did not provide good cause to substitute Dr. Meggs. See Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 250 (6th Cir. 2001) ("fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under Daubert, be afforded a second chance to marshal other expert opinions and shore up his case"). Similarly, that new scientific evidence relating to hydrogen sulfide exposure was published after the deadline for primary expert disclosure does not provide good cause to re-designate Dr. Meggs as a primary witness. Instead, Marmo should have sought leave to present supplemental opinions by her existing primary experts. See Fed. R. Civ. P. 26(e).

Furthermore, IBP would have suffered significant prejudice if the district court allowed Dr. Meggs to testify as a primary expert witness. IBP based its litigation strategy on the initial disclosure of primary experts, including the designation of Dr. Kilburn to opine on causation. It selected its own expert witnesses and developed motion and trial strategies based on that expert witness evidence. See Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008-09 (8th Cir. 1998) (because defendant had already prepared its summary judgment motion at least partially based on the lack of expert opinion to support plaintiff's claim, the district court did not abuse its discretion in excluding plaintiff's untimely disclosed expert). To cure the prejudice in allowing Dr. Meggs to testify as a primary witness, the district court would have had to re-progress the case and practically start anew. Within two months of trial, the district court did not abuse its discretion in refusing to allow the re-designation.

13

Third, Marmo argues that the district court erroneously refused to allow Dr. Meggs to testify as a rebuttal witness. During opening statements, IBP's counsel remarked that no doctor would testify about Marmo and her health. Marmo claims that the statement created a false inference that no medical evidence supported her claims. She contends that the district court should have allowed Dr. Meggs to testify to rebut the allegedly false inference.

We disagree. "Allowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of the individual most able to weigh the competing circumstances, the trial judge." Gossett v. Weyerhaeuser Co., 856 F.2d 1154, 1156 (8th Cir. 1988) (citations omitted). The district court instructed the jury that the arguments of counsel are not evidence. This instruction cured any prejudice that might have been caused by the remark. Id. at 1157-58; Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002) (an admonishment to the jury that statements made by an attorney are not evidence remedies any prejudice). Moreover, IBP presented no evidence on medical causation, and therefore, there was no evidence for Dr. Meggs to rebut. Accordingly, the district court did not abuse its discretion in refusing to allow Dr. Meggs to testify in rebuttal.[5] See Life Plus Int'l, 317 F.3d at 804 (a party may not "get admitted through the back door of rebuttal evidence that which the district court correctly barred . . . at the front door").

---

[5] IBP contends that we must review this issue for plain error because Marmo contemporaneously failed to object during the opening statement. Federal Rule of Evidence 103(a)(1) requires objections to evidence to be "timely." For an objection to be timely, "it must be made at the earliest possible opportunity after the ground of objection becomes apparent, or it will be considered waived." Terrell v. Pollard, 744 F.2d 637, 638-39 (8th Cir. 1984). We need not address whether Marmo waived the objection by waiting until the day following opening statements to lodge her objection because we affirm the district court even under the less deferential abuse-of-discretion standard.

**D.    Jury Instructions**

Marmo advances several arguments relating to jury instructions.  In this diversity case, Nebraska law governs the substance of jury instructions.  Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885-86 (8th Cir. 2006).  "District courts have 'wide discretion' in drafting jury instructions."  Id. at 886 (quoting Omega Healthcare Investors, Inc. v. Lantis Enters., Inc., 256 F.3d 774, 776 (8th Cir. 2001)).  "Our review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury."  Id.

      1.    Instruction on Damages

The district court instructed the jury: "If you return a verdict for Carol Marmo, then you must decide how much money will compensate Carol Marmo for the discomfort, annoyance, and inconvenience that she experienced in the use and enjoyment of her residential property."  Marmo argues that this instruction was insufficient for two reasons.  First, she contends that the district court should have instructed the jury that she was not required to prove a specified dollar amount of damages.  Second, she argues that the instruction was too narrow because it did not expressly explain that the jury could award damages for physical and mental injury.  In particular, Marmo contends that the district court should have instructed the jury that she was entitled to damages for "the nature and extent of the injury, including whether the injury is temporary or permanent and whether any resulting disability is partial or total."

The district court's instruction was based on well-settled Nebraska law.  See Thomsen v. Greve, 550 N.W.2d 49, 57 (Neb. Ct. App. 1996).  Moreover, the instruction proposed by Marmo includes consideration of factors that were no longer part of the case, such as permanent injury.  Even if there were an instructional error,

Marmo has not made any showing that it affected her substantial rights. To the contrary, the instruction left Marmo's counsel free to argue that Marmo experienced a multitude of damages within the general categories — and he did so. The instruction adequately represented the evidence and applicable law in light of the issues presented to the jury.

### 2. Instruction on Pre-Existing Conditions

Marmo argues that the district court erred in failing to include a pre-existing condition instruction. We disagree. A pre-existing condition instruction should be given rarely and only when supported by the evidence. See NJI2d Civ. § 4.09 cmt. II. The instruction proposed by Marmo related to pre-existing respiratory and neurological symptoms, yet there was no evidence at trial that Marmo suffered from either respiratory or neurological problems. Thus, there is no factual basis for the proposed instruction.

### 3. Instruction on Concurrent Cause

Marmo submits that the district court erred in refusing to give a concurring cause instruction in light of IBP's arguments and evidence of other sources of hydrogen sulfide in her neighborhood.[6] She contends that the small verdict suggests that the jury reduced the award to reflect the existence of twelve other potential sources of hydrogen sulfide. However, the district court instructed the jury to award Marmo for all the discomfort, annoyance, and inconvenience she experienced; the court did not instruct the jury to apportion damages. Moreover, Marmo's counsel

---

[6] Evidence showed that there were thirteen potential sources of hydrogen sulfide gas in the Dakota City area. IBP argued that those sources may have caused the hydrogen sulfide in Marmo's home and that it was undeterminable how much the other potential sources contributed to the problem.

16

informed the jury that other sources were inconsequential. The exclusion of a concurrent cause instruction was not erroneous.

4.     <u>Instruction on Loss of the Sense of Smell</u>

In the partial summary judgment order, the district court ruled that the lack of expert testimony precluded Marmo from recovering for permanent medical injury. IBP asked for a specific instruction informing the jury that it could not award damages for Marmo's permanent loss of the ability to smell. The district court refused the request, reasoning that a reasonable jury would conclude that the loss is not "discomfort, annoyance, or inconvenience."

During closing arguments, Marmo's counsel used a demonstrative slide that asked the jury to award damages for "the loss of one of the five senses." The district court sustained IBP's objection to the slide, instructed the jury to not award any damages based on an alleged loss of the sense of smell, and directed that the slide be removed.

Marmo purports that these actions left the jury with the false inference that Marmo had contravened the court's orders and deprived the jury of the ability to award damages even for temporary loss of the sense of smell. However, Marmo had not presented causation evidence to permit recovery for a loss of her sense of smell. Thus, the district court properly instructed the jury.

**E.     Taxable Costs**

At the completion of trial, Marmo sought $165,159.00 in expenses and costs. The district court awarded Marmo $23,003.56, based on her limited success at trial

and her failure to provide sufficient information to support the bill of costs. Marmo argues that the district court improperly reduced the award.

Costs other than attorneys' fees "shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d); see also 28 U.S.C. § 1920 (enumerating costs that are recoverable). Rule 54(d) presumes an award of costs to the prevailing party; however, the district court has substantial discretion in awarding costs. Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1072 (8th Cir. 2000) (citations omitted). Indeed, Rule 54(d) is phrased in permissive terms and generally grants a federal court the discretion to refuse to tax costs in favor of the prevailing party. Id. (citation omitted). Accordingly, we review the district court's decision concerning the award of costs for abuse of discretion. Martin v. DaimlerChrysler Corp., 251 F.3d 691, 695 (8th Cir. 2001).

1.      Transcription Costs

A district court may tax transcription costs if a deposition was "necessarily obtained for use in a case" and was not "purely investigative." Smith, 436 F.3d at 889; see also 28 U.S.C. § 1920. The Bill of Costs Handbook used by the District of Nebraska details what deposition transcripts are necessary. It provides that costs incurred in taking depositions generally will be taxed in favor of the prevailing party "if the taking of the depositions was reasonably necessary at the time it was taken, even though they may not have been used at trial." (IBP Add. in Appeal No. 05-3649 at 3.) However, it also requires that a prevailing party show that the deposition was introduced into evidence, relied upon for cross-examination or impeachment purposes, or otherwise useful in assisting a resolution of contested issues. (Id.) The Handbook further provides that depositions taken solely for discovery are not taxable as costs. (Id.)

18

The district court refused to tax costs associated with witnesses whom Marmo voluntarily withdrew or whom the district court ruled inadmissible.[7] When a party withdraws a witness in response to a motion in limine, or when the district court concludes that a witness does not have the expertise under Federal Rules of Evidence 104 or 702 to assist the jury in determining an issue, the district court is well within its discretion to deny costs associated with that witness. Moreover, the district court is in a better position than the Court of Appeals to assess whether the depositions of these witnesses were necessary. Accordingly, we find no abuse of discretion.

2.    Witness Fees

A district court may award witness fees if it determines that the witness's testimony "was crucial to the issues decided and the expenditures were necessary to the litigation." Neb. Pub. Power Dist. v. Austin Power, Inc., 773 F.2d 960, 975 (8th Cir. 1985). The Handbook provides that witness fees will not be taxed if the witness is subpoenaed for trial but does not testify, or if the witness is deposed but the transcript is not used at trial or in support of a motion. (IBP Add. in Appeal No. 05-3649 at 5.) The district court did not abuse its discretion in refusing to award costs for witnesses who did not testify at trial. Likewise, the district court did not abuse its discretion in declining to award transportation costs due to insufficient explanation.

---

[7] After IBP objected to the bill of costs, Marmo sought to supplement the bill of costs to demonstrate how each deposition was necessary to the litigation. The district court struck the supplement, reasoning that "it is imperative that counsel provide materials to the Court at the appropriate juncture in the proceedings and not in reaction to opposing counsel's observation of the deficiency." (Marmo App. in Appeal No. 05-3649 at 400.) The district court was well within its discretion to strike the untimely supplementation.

19

3. Exemplification and Photocopy Costs

Marmo sought $124,914.47 in exemplification and photocopy costs. Because this case was one of thirteen consolidated for pretrial purposes, the district court apportioned these costs among the thirteen cases. It noted that many of the materials prepared for trial in this action — such as graphic and visual aids, as well as materials prepared for electronic display — will be useful in the other twelve cases. In addition, the district court refused to award costs that were described insufficiently.

Copy and exemplification fees may be awarded if the fees were incurred for items "necessarily obtained" for use in the case. 28 U.S.C. § 1920(4). The Handbook explains that expenses for copying papers are "necessarily obtained" if "the copies were received as evidence, prepared for use in presenting evidence, or obtained for service on the other parties in the litigation and the court." (IBP Add. in Appeal No. 05-3649 at 8.) The Handbook further provides that routine copy expenses made for service, filing, or convenience of counsel are not taxable absent prior court approval. (Id.) Marmo challenges the Handbook provisions as contrary to § 1920. However, that section provides the district court with discretion to assess costs, and the Handbook is a product of exercising that discretion. The district court appropriately followed the Handbook provisions and limited photocopying expenses to those necessarily incurred in this litigation.

In addition, a division of copy and exemplification costs among the thirteen cases was equitable. The plaintiffs in each of these cases have incurred costs, and the district court may not award Marmo costs for expenses that other plaintiffs incurred. Moreover, the apportionment reduced the risk of duplicative cost recovery. Accordingly, Marmo's reliance on In re Derailment Case, 417 F.3d 840 (8th Cir. 2005), is misplaced. In that case, we held that the district court should have held the taxation award in abeyance until all related actions were resolved. Id. at 845. However, that case was based on joint and several liability of the losing parties. In

20

this case, IBP, the losing party, is the only party that may be held liable for costs. The reasoning of that case, therefore, does not apply here.

**CONCLUSION**

Nebraska law does not recognize an unjust enrichment claim based on the pollution easement theory advanced by Marmo. Accordingly, the district court properly denied leave to amend the complaint to add an unjust enrichment claim. Likewise, the district court appropriately refused to apply the continuing tort doctrine to the negligence claim and properly found that the statute of limitations barred the claim. The district court did not abuse its discretion in finding the opinion of Dr. Ammann unreliable and in refusing to allow Dr. Meggs to testify as either a primary or rebuttal witness. We further find no error in the jury instructions. Finally, the district properly exercised its discretion to reduce and apportion Marmo's request for costs because she did not comply with the Bill of Costs Handbook, requested reimbursement of nontaxable expenses, and failed to include sufficient detail to substantiate certain items. In addition, the district court did not abuse its discretion in finding that the requested cost amount was disproportionate to the verdict and inequitable under the circumstances of this case.

For the foregoing reasons, we affirm the judgment of the district court.

ARNOLD, Circuit Judge, dissenting.

I respectfully disagree with the court's conclusion that the courts of the State of Nebraska would not recognize a claim for unjust enrichment in the circumstances of this case. The law of restitution, as the court seems to recognize, is well established in Nebraska. Generally speaking, restitution is available whenever a person acquires a benefit that in justice he or she ought not to retain. Ahrens v. Dye, 208 Neb. 129,

21

133, 302 N.W. 2d 682, 684-85 (1981). The generality of this principle may account for the court's reluctance here to entertain this suit, but in truth the principle is not unbounded and there are well-defined and well-developed categories into which claims for restitution fit. One of those is when a person wrongfully uses the property of another for profit. See Restatement (Third) of Restitution and Unjust Enrichment § 40 (Tentative Draft No. 4, 2005). Nebraska law specifically recognizes, moreover, that in a proper case a person who is unjustly enriched must disgorge the profits produced by the wrongful act that he or she committed. See Trieweiler v. Sears, 268 Neb. 952, 979, 689 N.W.2d 807, 834 (2004).

These are the principles, well established in Nebraska law, that the plaintiff seeks to have applied to her case. She claims that the defendant has wrongfully used her property and that allowing them to keep the gains that they realized from their tort would unjustly enrich them. There is nothing particularly exotic or radical about this claim. It is true that no Nebraska court has recognized a claim that is the exact duplicate of the one raised here, but the present claim is constructed from the basic building blocks of the law of restitution, which is very much a part of Nebraska law. Our job is simply to apply the law that we believe the Supreme Court of Nebraska would apply in the circumstances. See Rucci v. City of Pacific, 327 F.3d 651, 652-53 (8th Cir. 2003); Williams v. Crews, 564 F.2d 263, 265 (8th Cir. 1977). For the reasons given, I have no doubt that that court would recognize this claim.

The court notes, correctly, that the plaintiff cites no Nebraska case directly on point. But it is also true that the defendant does not point to any Nebraska case that rejects a claim like the plaintiff's. In fact, though the court acknowledges numerous cases from other jurisdictions that provide restitutionary relief in the present circumstances, it is highly suggestive that the court does not advert to a single instance in which a court turned away a similar claim. The reason for the lack of such authority, I believe, is that the plaintiff's case presents essentially a mine-run, routine restitutionary claim that calls for a relatively straightforward application of familiar

legal principles.  Another federal district court in Nebraska has correctly recognized this.  <u>See</u> <u>Schwan v. CNH Am. LLC</u>, No. 4:04CV3384, 2006 WL 1215395, at *34 (D. Neb. May 4, 2006).

The court also points out that Nebraska courts provide an action of nuisance for damages in the present circumstances; but it is unclear exactly why the court thinks that the nuisance remedy would be exclusive.  It is certainly not true, as the defendant repeatedly suggests in its brief, that restitution is an equitable remedy and therefore is available only when an action at law is not.  Restitution is not an equitable remedy: It is part of the substantive law of obligations, like the law of tort and contract, and the Nebraska courts have recognized that it is in ordinary courts of law that restitutionary actions lie.  <u>See</u> <u>Collection Bureau of Grand Island, Inc. v. Fry</u>, 9 Neb. App. 277, 282-84, 610 N.W.2d 442, 446-48 (2000).  Nor is there any other principled reason why the mere existence of a nuisance remedy for damages should oust the plaintiff from her restitutionary remedy.  Restitution is simply there at the plaintiff's option:  She may waive the tort and sue for unjust enrichment.  As Judge Posner has said, "Restitution is available in any intentional-tort case in which the tortfeasor has made a profit that exceeds the victim's damages (if the damages exceed the profit, the plaintiff will prefer to seek damages instead)."  <u>Williams Electronics Games, Inc. v. Garrity</u>, 366 F.3d 569, 576 (7th Cir. 2004).

Though the availability of the restitutionary claim is plain enough, it is not altogether clear what remedy the Nebraska courts would provide in the present case. If an injunction would not have been issued under Nebraska law to enjoin the defendant's emissions, it is likely that disgorgement of the profits realized from them would not be available as a remedy in this case.  Instead, a Nebraska court might well enter a judgment in an amount equal to the reasonable cost of a license to trespass or commit a nuisance--the market price, in other words, of a so-called pollution easement.  <u>See</u> Restatement (Third) of Restitution and Unjust Enrichment § 40, Illus. 14 (Tentative Draft No. 4, 2005); <u>cf.</u> Daniel Friedmann, "Restitution of Benefits

23

Obtained Through the Appropriation of Property or the Commission of a Wrong," 80 Colum. L. Rev. 504, 531-32 (1980). This is a matter that the district court ought to explore on a more fully developed record.

For the reasons given, I would reverse the district court's summary judgment on the plaintiff's unjust enrichment claim and remand for further proceedings.

_____