# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3919

_____

| | |
|---|---|
| Antoine Khoury, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| v. | * |
| | * |
| Philips Medical Systems, | * |
| | * |
| Defendant/Appellee, | * |
| | * |
| Reliastar Life Insurance Company | * |
| | * |
| Intervenor/Appellee. | * |

_____

No. 09-3965

_____

Appeals from the United States
District Court for the District of
Minnesota.

| | |
|---|---|
| Antoine Khoury, | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |
| Philips Medical Systems, | * |
| | * |
| Defendant/Appellee, | * |
| | * |
| Reliastar Life Insurance Company, | * |
| | * |
| Intervenor/Appellant. | * |

Submitted: June 15, 2010
Filed: August 10, 2010

Before RILEY, Chief Judge, CLEVENGER[1] and COLLOTON, Circuit Judges.

RILEY, Chief Judge.

Dr. Antoine Khoury appeals the district court's[2] dismissal of his tort lawsuit against Philips Medical Systems (Philips). Dr. Khoury argues the district court abused its discretion in excluding the testimony of his expert witness, Dr. Robert Andres, as unqualified and unreliable under Fed. R. Evid. 702. We affirm.

## I.    BACKGROUND

Dr. Khoury is an interventional cardiologist. On October 31, 2003, Dr. Khoury was performing a coronary angiogram on a patient in Catheterization Laboratory 5 (Cath Lab 5) of the Regions Hospital in St. Paul, Minnesota. Cath Lab 5 contained an Integris BH5000 biplane system (BH5000), which Philips designed and installed. The BH5000 consists of a monitor bank and a radiation shield (RPS). Philips had mounted the monitor bank and RPS to a single ceiling track. Because the monitor bank and RPS moved along a single track, the monitor bank and RPS moved in tandem. An articulating arm enabled the RPS to move up and down.

---

[1]The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit, sitting by designation.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

At the outset of the angiogram, Dr. Khoury placed the RPS near the patient's legs. The monitor bank moved to the patient's feet in tandem with the RPS. As Dr. Khoury prepared to insert a femoral catheter into the patient, a nurse moved the monitor bank without warning. The movement of the monitor bank caused the RPS to move toward the patient. Because the articulating arm was locked in place, Dr. Khoury grabbed the RPS with both hands to prevent the RPS from striking the patient. Dr. Khoury felt pain radiate from his neck to his lower back.

In October 2007, Dr. Khoury sued Philips in Minnesota state court. Philips removed the case to the federal district court pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446(b). Dr. Khoury is a citizen of Minnesota, Philips is a Delaware corporation with its principal place of business in New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[3]

In January 2008, Dr. Khoury filed an amended complaint against Philips. The amended complaint lacked formal counts but generally alleged "the design and assembly of the equipment, specifically the [RPS] articulating arm and monitor [bank] arm, as attached through the overhead between the [RPS] and the monitor [bank], was unreasonably dangerous to the user when they were used as intended or used in a way that the manufacturer[] could reasonably have anticipated." Dr. Khoury alleged he was permanently impaired as a result of the injuries he suffered on October 31, 2003.

In November 2008, the district court granted ReliaStar Life Insurance Company's (ReliaStar) unopposed motion to intervene. Before October 31, 2003, ReliaStar issued Dr. Khoury a long-term disability policy governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA), as amended. ReliaStar was paying Dr. Khoury ERISA covered long term disability

_____

[3]We ignore Mavig GmbH, a defendant Dr. Khoury long ago dismissed without prejudice.

benefits arising from his injury in Cath Lab 5. ReliaStar alleged the policy granted ReliaStar a right of subrogation against Dr. Khoury in the event Dr. Khoury were to recover damages from Philips.

In June 2009, Philips moved for summary judgment. Among other things, Philips argued the testimony of Dr. Khoury's expert witness, Dr. Andres, was inadmissible and thus Dr. Khoury lacked sufficient evidence to prove his claim. Philips asserted Dr. Andres was unqualified to render an expert opinion in the case and his opinions were unreliable. Dr. Khoury resisted Philips's motion.

In August 2009, the district court held a hearing on Philips's summary judgment motion. At the outset of the hearing, the district court expressed doubt as to whether Dr. Khoury was "sure exactly what [his] claim is," i.e., whether Dr. Khoury was pressing a design defect claim, a negligent installation claim, or something else. Counsel for Dr. Khoury responded, "Basically the issue is the design of the monitor strut system." When the district court asked whether "strict liability is still an issue in this case" (as opposed to negligent installation), counsel answered "[s]trict liability on the design side . . . . Yes."

In November 2009, the district court excluded Dr. Andres's testimony under Fed. R. Evid. 702. The district court viewed Dr. Khoury's amended complaint as asserting that Philips's single-track design for the BH5000 in Cath Lab 5 was defective. With this understanding, the district court found that, because Dr. Andres was an ergonomist, Dr. Andres was qualified to testify as to the amount of force and biomechanical stress Dr. Khoury suffered when trying to block and hold the RPS. The court found Dr. Andres was not "qualified to testify as an expert on the design of Cath Lab 5 or the BH5000" itself because Dr. Andres was not "trained, experienced or educated in the design of medical devices or laboratories."

In the alternative, the district court found, even if Dr. Andres were qualified, his testimony was unreliable. The district court found Dr. Andres's opinions were "questionable" because Dr. Andres never replicated the circumstances leading to Dr. Khoury's injury. Dr. Andres never tested a single-track design; never measured the amount of force needed to stop the RPS; never examined the RPS or articulating arm, apart from measuring the RPS's width; and never considered a potential alternate cause of Dr. Khoury's injury, namely, the nurse's failure to announce her intention to move the monitor bank. Dr. Khoury admitted in his deposition it was "common practice" for the nurse to make such an announcement.

Because Dr. Andres's testimony was essential to Dr. Khoury's ability to prove his claim, the district court granted Philips's motion for summary judgment and dismissed Dr. Khoury's amended complaint. The district court apparently dismissed ReliaStar's intervenor complaint as well, although the district court's order granting Philips's motion for summary judgment and the clerk of court's judgment omit any reference to ReliaStar's intervenor complaint.

Dr. Khoury appeals the exclusion of Dr. Andres's testimony and the consequent dismissal of his amended complaint. ReliaStar thereafter filed a "protective appeal," asking for reinstatement of its intervenor complaint in the event of reversal.

## II. DISCUSSION

### A. Standard of Review

While we review the grant of a motion for summary judgment de novo, "[a] trial court must be given wide latitude in determining whether an expert's testimony is reliable." Fireman's Fund Ins. Co. v. Canon USA, Inc., 394 F.3d 1054, 1057 (8th Cir. 2005). "We review the district court's decision concerning the admission of expert opinions for an abuse of discretion." Id.

**B. Legal Standard**

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In construing Rule 702, we require the proponent of expert testimony to prove, among other things, that the expert is qualified and his opinion is reliable. Recently we stated:

> When considering expert testimony, a district court must ensure that "all scientific testimony is both reliable and relevant." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." Id.; [Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90 (1993)]. To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. Marmo, 457 F.3d at 757.

Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010).

**C. Analysis**

**1. Dr. Khoury's Claim**

In his opening brief, Dr. Khoury presses a claim for negligent installation instead of a claim for defective design. But that is not how Dr. Khoury characterized

his claim to the district court, and it is not the claim upon which the district court ruled. Any such negligence claim is, as Philips argues, waived. See, e.g., Anderson v. Unisys Corp., 52 F.3d 764, 765 (8th Cir. 1995) (discussing waiver principles and holding, "because the district court never passed upon this issue, we decline to consider it here").

In his reply brief, Dr. Khoury characterizes the claim in his amended complaint as a "design defect claim" regarding "the manner in which the machine was installed, using a single track system that created too much weight for a user like Dr. Khoury to safely stop once it was placed in motion." In Dr. Khoury's words, "Philips got a wrongly designed installation precisely correct. That is the problem."

We think what Dr. Khoury means to claim—or must now say in light of his concessions during the district court's summary judgment hearing and the limited scope of the district court's order—is that Philips's single-track system for its BH5000 system is a defective design. There is no evidence in this record to indicate the BH5000 system did not operate as intended or the BH5000 system was installed in Cath Lab 5 in a negligent manner. The claim at issue in this appeal is whether Philips's single-track design in Cath Lab 5 was unreasonably dangerous.

With this understanding of Dr. Khoury's claim, we examine the district court's exclusion of Dr. Andres's expert testimony.

### 2. Qualifications

The district court did not abuse its discretion in finding Dr. Andres was unqualified to give expert testimony on the design issue. As the district court correctly pointed out, it is undisputed Dr. Andres has no training, education, or experience in the design of laboratories or of monitor banks and radiation shields. Dr. Andres is an ergonomist. Ergonomics is "[t]he scientific study of the efficiency of man in his working environment." Oxford English Dictionary (Online ed. 2010). The

district court did not abuse its discretion in forbidding Dr. Andres from testifying outside of his area of expertise and opining as to the proper design of Philips's single-track design in Cath Lab 5. See Kennedy v. Baxter Healthcare Corp., 348 F.3d 1073, 1074-75 (8th Cir. 2003) (per curiam) (affirming the district court's exclusion of an expert, who was not a physician or toxicologist, from opining as to "what makes a rubber glove safe or unsafe for allergy purposes or what level of proteins or allergens are necessary to achieve a safe level for allergy purposes"). On the contrary, we have reversed a district court for permitting an expert to testify outside of his field. See, e.g., Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715-16 (8th Cir. 2001) (holding a district court abused its discretion in permitting a hydrologist to testify about safe warehousing practices, an area outside of his expertise). Dr. Khoury does not claim, for example, that the single-track design caused Dr. Khoury repetitive stress injuries because of an alleged ergonomic failing.

In holding the district court did not abuse its discretion in finding Dr. Andres unqualified to render an opinion, we do not suggest Dr. Andres lacks ability or expertise as an ergonomist. The problem for this case is Dr. Andres has no training, education, or experience in the design of medical laboratories or of monitor banks and radiation shields.

### 3. Reliability

Because the district court did not abuse its discretion in finding Dr. Andres was unqualified to testify in this case, we need not decide whether the district court abused its discretion in finding Dr. Andres's proposed expert testimony was unreliable.

## III. CONCLUSION

We affirm the district court's decision to exclude Dr. Andres's expert testimony and to dismiss Dr. Khoury's amended complaint. ReliaStar's appeal is dismissed as moot.

_____