# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1794

_____

WWP, Inc.,                                  *
                                            *
                Appellee,                   *
                                            *    Appeal from the United States
        v.                                  *    District Court for the District of
                                            *    Nebraska.
Wounded Warriors Family Support,            *
Inc.,                                       *
                                            *
                Appellant.                  *

_____

Submitted: November 18, 2010
Filed:  January 12, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

WWP, Inc. d/b/a Wounded Warrior Project (WWP) and Wounded Warriors Family Support, Inc. f/k/a Wounded Warriors, Inc. f/k/a Wounded Warriors Hospital Fund (WWFS) are two distinct charities that assist injured veterans and their families. WWP alleges WWFS sowed confusion on the Internet by using a website to solicit donations intended for WWP, in violation of Nebraska law. After a jury trial, the

district court[1] awarded WWP approximately $1.7 million and entered a permanent injunction against WWFS. WWFS appeals. We dismiss in part and affirm in part.

## I.    BACKGROUND[2]
### A.    WWP

John Melia founded WWP. Melia is a former Green Beret and member of the 20th Special Forces Group (Airborne). In 1992, Melia was a passenger in a CH-46 helicopter that caught fire and exploded over the Red Sea off the coast of Somalia. Melia suffered burns over 20% of his body. While recovering in military hospitals around the world, Melia noticed that, although he was receiving first-rate medical treatment, there were "gaps" in the services the armed forces provided to wounded veterans. In 1995, Melia left the military.

In 2002, as wounded veterans began returning to the United States from the Afghanistan War, Melia decided to help. Melia "just wanted to provide something simple, the things that I didn't have when I came back . . . like underwear and socks and a calling card and a backpack to carry my stuff in." Melia founded WWP in the basement of his Virginia home and, with the donations he collected, delivered backpacks stocked with care and comfort items to nearby military hospitals.

In the ensuing years, WWP has greatly expanded its offerings to wounded veterans from the Afghanistan and Iraq Wars. Today WWP provides bedside training about veterans' and social security disability benefits, an adaptive sports program, college preparatory courses, and small group combat stress counseling. In partnership

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

[2]We present the facts in the light most favorable to WWP, affording WWP all reasonable inferences from the jury's verdicts. See Jones v. Nat'l Am. Univ., 608 F.3d 1039, 1046 (8th Cir. 2010).

with Trek Bicycle Corp., which donates custom-made bicycles to disabled veterans, WWP sponsors Soldier Ride.

WWP employs over 100 people and spends 75% to 82% of donations directly on wounded soldiers and their families. In 2008, WWP spent $39 million. Advertising, marketing, and other public relations activities allow WWP "to tell stories of wounded warriors and the way that [WWP] has helped them in order to drive up an interest and a public awareness about [WWP's] cause." WWP sends over ten million mailers annually and appears on a "massive amount" of television and radio shows.[3] WWP has "become synonymous with veteran service to this generation of wounded veterans and their families."

WWP operates two websites, woundedwarrior.org and woundedwarriorproject.org, which were first registered in January 2003 and March 2004, respectively. In 2005, WWP registered its now famous trademark, which depicts one soldier carrying another soldier on his back.

### B.   WWFS

In 2003, Colonel John Folsom founded the Wounded Warriors Hospital Fund during his military service in Germany. Folsom is a resident of Omaha, Nebraska, a Marine helicopter pilot, and a veteran of Operation Desert Storm. He is also a licensed realtor and a former stockbroker.

Folsom believed the military was ill-prepared to help wounded soldiers returning from combat concerning "morale and comfort items." In early 2003, Folsom organized small fundraising events in Germany, such as "brat sales,"

---

[3]Many celebrities and well known organizations have supported WWP over the years, including Bob Costas, Sean Hannity, Bill O'Reilly, Gary Sinise, Jimmy Buffett, the late Tony Snow, the National Football League, and HBO.

ultimately raising $1,500 under the Wounded Warrior Hospital Fund moniker. Folsom used the funds he raised to purchase electronic equipment, sweat suits, and chewing tobacco for wounded soldiers in Germany. Folsom also developed a website to solicit donations, woundedwarriorhospitalfund.org.

In 2004, Folsom incorporated Wounded Warriors Hospital Fund as Wounded Warriors, Inc. and started a new website, woundedwarriors.org. Folsom contemporaneously moved the charity's operations to the United States. WWFS used incoming donations to buy computers, which Folsom shipped to military hospitals throughout the United States. At all relevant times, WWFS conducted little to no advertising, fundraising, or marketing, instead relying on networking and its websites to receive donations.

Donations to WWFS increased dramatically upon the launch of the woundedwarriors.org website. In 2006, WWFS bought condominiums in Florida and Texas with the donations. WWFS offers the condominiums to wounded veterans and their families for vacations. The condominiums' occupancy rate for soldiers and others staying for free is only approximately 30%, so WWFS rents the condominiums to others at a profit when wounded veterans, their families, or WWFS's employees are not staying in them.

### C.    Dispute

By 2004, Melia discovered Wounded Warrior Hospital Fund on the Internet. Melia sent Folsom an email, in which Melia pointed out the two charities were engaging in similar work, but said, "You're in Germany, I'm here." Melia was not concerned about potential confusion between the two charities in the public eye, because he "didn't think that we were in any way crossing each other." Melia offered to help Folsom in his fundraising efforts, although Folsom declined. WWFS later listed WWP on its woundedwarriorhospitalfund.org website, as one of its "pass-through" charities, and twice donated to WWP.

-4-

Melia became concerned about confusion in 2004, when Folsom renamed his charity "Wounded Warrior, Inc.," moved its operations to the United States, and established the woundedwarriors.org website. The website was very similar to WWP's website, woundedwarrior.org. Folsom changed the website's color scheme and font and the text phraseology to mimic WWP's website. Folsom placed a disclaimer at the bottom of WWFS's new homepage in a difficult-to-read typeface with cream on white coloring.

When giving money to WWP, donors would often write checks in shorthand to "Wounded Warriors." Melia feared Folsom's actions would engender "major confusion" among potential donors.

### D. Misdirected Donations

After Folsom launched the woundedwarriors.org website, WWP was "contacted by individuals indicating there was some confusion and that people were trying to reach [WWP] and instead reaching [WWFS]." Years later, during discovery in the instant lawsuit, WWP learned WWFS was receiving and cashing a large number of checks intended for WWP. Some checks were made payable to "Wounded Warriors Project"; other checks were accompanied by correspondence indicating support for WWP or mentioning one of WWP's marketing or fundraising efforts. For example, in 2007, WWFS received a $100 donation "For Jerrod's week in Alaska" immediately after WWP had publicized providing an Alaskan rehabilitation trip for a wounded veteran named Jerrod. WWFS simply cashed and deposited every check sent to WWFS's address.[4]

---

[4]By contrast, WWP did not cash a check unless the check was made payable to "Wounded Warriors Project" or the donor clearly informed WWP that the donor intended to donate to WWP.

After subpoenaing WWFS's financial records, WWP hired a forensic accountant from Omaha, Robert L. Kirchner. Kirchner reviewed approximately 7,500 checks sent to WWFS between November 1, 2004, and July 1, 2008, roughly when WWFS operated the woundedwarriors.org website. In his analysis, Kirchner determined WWFS received donations intended for WWP.

To determine the amount of donations misdirected from WWP to WWFS, Kirchner compared the amount of donations WWFS received immediately before and after operating the woundedwarriors.org website with the amount of donations WWFS received while such website was operational. Kirchner found that, in mid- to late-2004, WWFS received an average of $1,337 per month in donations. When the woundedwarriors.org website went "live," WWFS's receipts spiked to $87,895 per month. After WWFS shut down the website, donations immediately decreased 56.2%.[5] Using the more conservative (latter) valuation, Kirchner calculated the amount of misdirected donations to be $1,267,729. Using the former valuation, the calculated amount of misdirected donations exceeded $2 million.

### E.    Prior Proceedings

In September 2007, WWP filed the instant lawsuit against WWFS. As relevant here, WWP's amended complaint alleged three state law claims. First, WWP claimed WWFS violated the Nebraska Deceptive Trade Practices Act (NDTPA), Neb. Rev. Stat. § 87-302, by "[(1)] passing off its services as those of WWP; [(2)] causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; [(3)] causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, WWP; and/or [(4)] disparaging the goods, services, or business of WWP by false or misleading representations of fact." Second, WWP claimed WWFS violated the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1602 *et seq.*,

---

[5]When WWFS's website closed, donations to WWP increased 29%.

insofar as WWFS's use of the name "Wounded Warriors" (1) was "likely to confuse the public and thus constituted an unfair method of competition or an unfair and deceptive act or practice in the conduct of trade or commerce"; and (2) was "an unfair and deceptive act or practice which has occurred in trade and commerce, that impacts the public interest, which has caused injury to WWP in its business or property and which injury is causally linked to [WWFS's] unfair and deceptive act." Third, WWP claimed unjust enrichment, in violation of Nebraska common law. WWP alleged WWFS knowingly received donations intended for WWP.

In July 2008, the district court entered a preliminary injunction against WWFS. The district court held WWP was likely to succeed on its NDTPA claim and ordered WWFS to shut down the woundedwarriors.org website.[6] WWFS did not appeal the entry of the preliminary injunction and shut down the website.

In September 2009, the matter proceeded to trial on WWP's NDTPA, NCPA, and unjust enrichment claims. After a four-day trial, a jury returned verdicts in WWP's favor on the NCPA and unjust enrichment claims. The jury awarded WWP $425,000 on its NCPA claim (for loss to WWP's reputation and goodwill) and $1,267,719 on WWP's unjust enrichment claim (for misdirected donations). The district court entered judgment on the jury's verdicts, but did not rule on WWP's NDTPA claim.

The district court denied a series of post-trial motions filed by the parties, with one exception. In January 2010, the district court granted in part WWP's motion to alter or amend the judgment to the extent WWP sought (1) entry of judgment on its NDTPA claim, and (2) conversion of the preliminary injunction into a permanent injunction.

---

[6]The district court did not analyze WWP's NCPA or unjust enrichment claims.

## II.    DISCUSSION

WWFS argues the district court erred in six respects.  We consider each of WWFS's arguments, in turn.

### A.    Preliminary Injunction

WWFS argues the district court abused its discretion in issuing the preliminary injunction.  With the entry of the permanent injunction, this portion of WWFS's appeal is moot and must be dismissed.  See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 314 (1999) ("Generally, an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter.  We have dismissed appeals in such circumstances.").

### B.    Motion to Compel

WWFS argues the district court abused its discretion in overruling WWFS's motion to compel.  See Duffy v. Wolle, 123 F.3d 1026, 1040 (8th Cir. 1997) (reviewing denial of motion to compel for "gross abuse of discretion").  We disagree.

During discovery, WWFS requested WWP produce "[a]ll documents relating to or evidencing any donations received by [WWP] from January 1, 2002 to the present."  WWP refused, and WWFS moved to compel.  The district court denied WWFS's motion for a number of reasons.  The district court found, among other things, WWFS's motion to compel was (1) "temporally overbroad" because WWFS was not operating in the United States in 2002; (2) "overbroad in scope" because WWFS was seeking donor information without regard to source or location; (3) unduly burdensome because WWFS was requesting production of all documents relating "to tens [of] thousands (or more) of donors"; and (4) "not reasonably calculated to lead to the discovery of admissible evidence," because WWFS had not asserted a counterclaim for unjust enrichment seeking the return of any misdirected donations.  The district court concluded "the discovery of some donations intended

for [WWFS] but instead retained by WWP . . . [is] not relevant to the calculation of damages here," recognizing WWP's expert, Kirchner, did not rely on WWP's donor information in reaching his opinion regarding WWP's damages.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Broad discovery is an important tool for the litigant, and so "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. That said,

> the [district] court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Id. at (b)(2)(C)(iii).

WWFS asserts WWP's donation records are "relevant in determining whether . . . confusion exist[ed] and to what extent WWP profited from the confusion[,] thereby affecting [Kirchner's] damage calculation." Even if we grant WWFS this premise, the district court nonetheless did not err in finding WWFS's request was overly broad and unduly burdensome. WWFS's request was excessively broad, and WWFS never attempted to narrow the scope of its request. See McGowan v. Gen. Dynamics Corp., 794 F.2d 361, 363-64 (8th Cir. 1986) (holding the district court did not abuse its discretion in denying a broad discovery request in part because the movant "made no effort to limit the scope of her requests even after the trial court's denial of her initial motion to compel"). WWP *did* produce its tax returns, audited financial statements, and monthly contribution summaries to WWFS, which totaled the donations to WWP for the relevant time periods. See id. (identifying other relevant evidence was available to the plaintiff, thereby justifying the denial of her

broad discovery request). The district court did not abuse its discretion in refusing to require WWP to "dump" all of its donation records on WWFS.

### C. Motion in Limine: Expert Testimony

In a motion in limine, WWFS asked the district court to bar Kirchner from testifying at trial. WWFS argued Kirchner's testimony did "not meet the helpful requirement of Fed. R. Evid. 702 and Daubert [v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)], and therefore, should be excluded." WWFS stressed Kirchner made only simple mathematical calculations to arrive at his damages calculation, and "his determinations with respect to misdirected donations [were] speculative at best, fail[ed] to rule out other alternative explanations[,] and fail[ed] to connect with the facts of the case."

The district court denied WWFS's motion, finding Kirchner relied on his experience as a forensic accountant, "analyz[ed] a substantial amount of financial data," and applied reliable methods in forming opinions that would help the jury understand the evidence. The district court averred WWFS's "challenges to[]Kirchner's failure to consider and account for certain factors goes to the weight of his testimony rather than admissibility."

WWFS reasserts its arguments on appeal. WWP responds that WWFS waived its arguments by failing to renew its objections to Kirchner's testimony at trial.

The district court's denial of WWFS's motion in limine was sufficient to preserve error, see Fed. R. Evid. 103(a); Shelton v. Kennedy Funding, Inc., 622 F.3d 943, 958-59 & n.14 (8th Cir. 2010) (discussing the most recent iteration of Rule 103(a)), but we hold the district court did not abuse its broad discretion in permitting Kirchner's testimony, see Khoury v. Philips Med. Sys., 614 F.3d 888, 891-92 (8th Cir. 2010) (standard of review). Fed. R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

There is not, as WWFS suggests, an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make ***complicated*** mathematical calculations. See In re Prempro Prods. Liab. Litig., 514 F.3d 825, 831 (8th Cir. 2008) (holding district court did not abuse its discretion in failing to exclude expert testimony that represented "an exercise in basic math using simple deductive reasoning"). Forensic accountants routinely rely, "surely to no one's surprise, on the books and records and financial information . . . provided." Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc., 178 F.3d 1030, 1035 (8th Cir. 1999).[7] WWFS's attacks on Kirchner's methodology lack merit.

_____

[7]Responding to a similar argument, in which a party argued proffered expert testimony was inadmissible under Fed. R. Evid. 702 because the expert "merely perform[ed] 'simple math calculations . . . which the average sixth-grader would be able to perform when equipped with a calculator, pencil and paper,'" one federal judge aptly observed:

[W]hat is a simple mathematical computation to one person may be mind-numbingly complicated to another. [I]f these calculations are as simple as defendants suggest they are . . . , then those jurors who are mathematically knowledgeable will immediately so recognize and wonder why the plaintiffs utilized a CPA to prove the obvious.

Arnold v. Ambulance Serv. of Bristol, Inc., No. 2:06-CV-105, 2007 WL 5117409, *1 (E.D. Tenn. Aug. 21, 2007).

And even if Kirchner's testimony were inadmissible under Fed. R. Evid. 702 because it was too straightforward, it was admissible under the purpose and rationale

### D.    Motion in Limine: Preliminary Injunction Evidence

WWFS argues the district court abused its discretion in allowing WWP to introduce evidence of the district court's pre-trial decision to enter a preliminary injunction shutting down the woundedwarriors.org website. WWFS opines that, by allowing the jury to speculate as to the reasons why the district court enjoined WWFS, the district court "improperly influence[d] [the] jury's impartiality from the outset of trial" and "effectively eviscerate[d] [WWFS's] constitutional right to a jury trial." WWP responds we should only review for plain error, because "the first mention of the preliminary injunction and WWFS's actions post-injunction came without objection from Folsom's own testimony."

We disagree with WWP's characterization of the sequence of events in the district court and will review WWFS's argument under the familiar abuse-of-discretion standard. WWFS filed a motion in limine seeking to exclude any mention of the preliminary injunction, which the district court denied on the condition that it would issue a cautionary instruction to the jury. During its case-in-chief, absent an objection from WWFS, WWP introduced into evidence a videotaped deposition of Folsom, in which WWP's attorney asked Folsom if WWFS had "ceased use of woundedwarriors.org web site pursuant to the [district court's] order in this case." Folsom answered, "Yes." In filing its motion in limine and receiving a definitive answer, WWFS preserved its objection to the mention of the preliminary injunction at trial and was not required to reassert an objection to the introduction of the deposition. See Fed. R. Evid. 103(a); Shelton, 622 F.3d at 958-59 & n.14.

With respect to the merits of WWFS's argument, WWP rejoins the district court's granting of the preliminary injunction was "admissible and relevant" evidence and, in any event, WWFS suffered no "unfair prejudice" because Kirchner's

---

of Fed. R. Evid. 1006 (summaries of voluminous writings). See SEC v. Amazon Natural Treasures, Inc., 132 F. App'x 701, 703 (9th Cir. 2005) (unpub. mem. op.); cf. United States v. Jennings, 724 F.2d 436, 441-43 & n.8 (5th Cir. 1984).

conservative theory of damages required a comparison of the amount of donations WWFS received before and after the district court shut down the woundedwarriors.org website.

We agree with WWFS that it would have been preferable had the district court excluded express evidence of the preliminary injunction. For example, the district court could have accepted a stipulation from the parties that, in 2008, WWFS shut down the woundedwarriors.org website. Such a stipulation would have allowed WWP to present one of its theories of damages (comparing the amount of donations WWFS received immediately before and after WWFS shut down its website) yet minimized any prejudice WWFS might suffer when the jury learned the court had entered an injunction against WWFS in WWP's favor shutting down the WWFS website. Cf. Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 39-40 (1st Cir. 2002) (discussing a stipulation and the prejudice a party suffers when the jury learns of a preliminary injunction). WWFS did not suggest this alternative treatment or any other similar option.

That said, we believe WWFS's allegations of prejudice are too speculative to warrant reversal. The references at trial to the district court's granting of the preliminary injunction were isolated. Critically, the district court issued a cautionary instruction immediately prior to the submission of the case to the jury. The district court ordered:

> You have heard evidence that the Court granted a preliminary injunction on July 14, 2008, and ordered the defendant to discontinue use of the www.woundedwarriors.org Website. The fact that the Court granted a preliminary injunction should not affect your decision as to who should prevail on the issues presented to you in this case.

Elsewhere in the final jury instructions, the district court stated:

> In the trial of this case and in this charge, I have in no way attempted to express my opinion as to who should prevail upon the issues submitted to you. You must not construe any statement, action, or ruling on my part in the trial of this case as an indication of any opinion on my part respecting the proper course of your verdict.

A jury is presumed to follow its instructions, and because we do not detect "'an overwhelming probability' that [the jury] was unable" to follow the district court's cautionary instruction, we will affirm. United States v. Uphoff, 232 F.3d 624, 626 (8th Cir. 2000) (quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)).

### E. Motion for Judgment as a Matter of Law

After trial, WWFS filed a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). WWFS argued there was insufficient evidence in the record upon which a reasonable jury could find in WWP's favor on WWP's NCPA and unjust enrichment claims. The gravamen of WWFS's argument was that there was insufficient evidence WWFS knowingly profited from confusion and kept misdirected funds or WWP otherwise was not injured.

The district court denied WWFS's post-trial motion in a written order, and WWFS reasserts its arguments on appeal. We review *de novo*, reversing only if no reasonable juror could have found in WWP's favor. See Mason v. Corr. Med. Servs., Inc., 559 F.3d 880, 885 (8th Cir. 2009).

The parties agree that, to prove a violation of the NCPA, WWP needed to show: (1) WWFS "engaged in an act or practice that constitutes an unfair method of competition or a deceptive trade practice in the conduct of any trade or commerce"; (2) WWFS's "conduct affect[ed] the public interest"; (3) WWP "was injured in its business or property by [WWFS]'s unfair method of competition or deceptive trade

-14-

practice"; and (4) damages.[8] To prove unjust enrichment, WWP was required to prove WWFS (1) received money, (2) "retained possession of the money," and (3) "in justice and fairness ought to pay the money to [WWP]." See Kanne v. Visa U.S.A. Inc., 723 N.W.2d 293, 302 (Neb. 2006).

The record is replete with evidence upon which a reasonable jury could find each of the foregoing elements to be met. With respect to the crux of WWFS's argument, *i.e.*, that there is insufficient evidence WWFS knowingly kept donations intended for WWP, a reasonable jury could credit the expert testimony of Kirchner, a forensic accountant, that WWFS possessed misdirected funds. A reasonable jury could also find WWFS's conduct in changing the name and appearance of its website, as well as placing an anemic disclaimer at the bottom, was designed to engender confusion among donors and amounted to a deceptive and unfair trade practice. See, e.g., Neb. Rev. Stat. § 87-302(a) (defining deceptive trade practices to include "[p]ass[ing] off goods or services as those of another," "[c]aus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or

---

[8]In the district court, WWFS argued the district court, not a jury, was required to rule on WWP's NCPA claim. See State ex rel. Douglas v. Schroeder, 384 N.W.2d 626, 629-30 (Neb. 1986) (holding plaintiff was not entitled to a jury trial under the NCPA); Hage v. Gen. Serv. Bureau, 306 F. Supp. 2d 883, 890 (D. Neb. 2003) (same). See also In re Pharm. Indus. Avg. Wholesale Litig., MDL No. 1456, __ F. Supp. 2d __, __, 2010 WL 3503986, *9 (D. Mass. Sept. 3, 2010) (adopting plaintiffs' concession that "the consumer protection statutes of Illinois, Nebraska, and New Hampshire do not provide a right to a jury trial"). But cf. Everest Capital Ltd. v. Everest Funds Mgmt., LLC, 393 F.3d 755, 758 (8th Cir. 2005) (reflecting, without discussion, that the district court permitted a jury to decide the plaintiff's NCPA and NDTPA claims). WWFS does not, however, reassert this argument on appeal, so we do not rule upon it. We note that, except for the jury's determination of the amount of damages WWP suffered for loss to its reputation and goodwill, the district court apparently agreed with the jury's factual findings. See Reinbrecht v. Walgreen Co., 742 N.W.2d 243, 247 (Neb. Ct. App. 2007) (stating, the NDTPA "does not provide a private right of action for damages"); Triple 7, Inc. v. Intervet, Inc., 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) (same).

certification of goods or service," and "[c]aus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"). As one of WWP's executives testified at trial, "there was a correlation between the money [WWFS was] receiving on their website and the activities [WWP was] doing to raise public awareness about [WWP's] cause and to raise funds in support of it." A reasonable juror might find the fact WWFS cashed checks that clearly referenced WWP's fundraising events as damning evidence against WWFS. Even if WWFS did not know WWP had sponsored the event, WWFS certainly knew WWFS had not done so.

WWFS stresses that, immediately before trial, WWFS returned over $18,000 in misdirected WWP donations. WWFS culled its financial records and determined that 89 of the 7,500 donations sent to WWFS while the woundedwarriors.org website was operational specifically referenced "Wounded Warriors Project" or certain of WWP's well-known marketing efforts. These 89 checks totaled over $18,000. WWFS asserts a reasonable jury could not, therefore, find WWFS retained any misdirected donations.

WWFS's examination of the donations it received is self-serving. A reasonable jury could infer that many of the 7,500 donations—even those lacking any specific reference to WWP or its more well-known marketing efforts—were intended for WWP in light of WWFS's deceptive and unfair trade practices and WWFS's lack of advertising or promoting its own charitable work.

**F.    Motion for New Trial**

Finally, WWFS argues the district court abused its discretion in denying its Fed. R. Civ. P. 59 motion for a new trial or to alter or amend judgment. See Wilson v. City of Des Moines, 442 F.3d 637, 640 (8th Cir. 2006) (standard of review). As grounds for reversal, WWFS reiterates many of the alleged errors discussed above, including the district court's failure to exclude Kirchner's testimony and the evidence of the

preliminary injunction. For the same reasons these alleged errors do not require reversal, a new trial is not warranted. There was no miscarriage of justice here. See PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 589 (8th Cir. 2009) ("The crucial determination 'is whether a new trial should have been granted to avoid a miscarriage of justice.'" (quoting Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997))).

The record justifies the jury's award of $425,000 on WWP's NCPA claim, because a reasonable jury could find WWFS damaged WWP's reputation and goodwill.

> The use by one organization of the name of another for the purpose of appropriating the standing and good will which the other has built up is a well recognized form of the wrong known to the law as unfair competition . . . . The subsequent appropriator of the name or one confusingly similar thereto usually seeks an unfair advantage, a free ride on another's established good will . . . . Usually his only purpose is to create confusion as to source, and benefit by it.

> Source, reputation and good will are as important to eleemosynary institutions as they are to business organizations. Anything which tends to divert membership or gifts of members from them injures them with respect to their financial condition in the same way that a business corporation is injured by diversion of trade or custom. Distinct identity is just as important to such an organization, oftentimes, as it is to a commercial company. Its financial credit—its ability to raise funds, its general reputation, the reputation of those managing and supporting it, are all at stake if its name is used by some other organization and the two become confused in the minds of the public. Of course, the similar names may be composed of descriptive terms which cannot, without more, be made the subject of an exclusive right. Nevertheless, an action may lie because of the attempt of the later corporation to palm itself off as the prior one, whether expressly or by conspicuous failure to disclaim identification with it.

Am. Gold Star Mothers, Inc. v. Nat'l Gold Star Mothers, Inc., 191 F.2d 488, 489-90 (D.C. Cir. 1951) (footnotes and internal marks omitted).

For example, Libby Baker, Regent of the Enoch Crosby Chapter of the Daughters of the American Revolution (DAR), testified her organization decided to donate $198 to WWP after learning about WWP's backpack program from one of WWP's executives. Intending to do so, Baker "googled" the phrase "Wounded Warriors," happened upon WWFS's website, and mailed a check to an Omaha, Nebraska, address listed thereon. Baker thought she had donated to WWP, but in reality the DAR sent a check to WWFS. WWFS cashed the check, and months passed without the DAR ever receiving a letter of confirmation or acknowledgment regarding its donation. Members of the DAR thought the lack of courtesy was "odd" and "decided . . . [the DAR] certainly wouldn't donate again" to WWP.

We cannot say that the jury's award of $425,000 is unreasonable. We agree with the district court that "[t]he dollar amount of damages to reputation and good will is generally difficult to ascertain." See Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 902 (7th Cir. 2001) (recognizing "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of good will" (quoting Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992) (internal quotation marks omitted))). We decline to review the cold record and substitute a different damages calculation for the jury's determination. "Mere difficulty in calculating damages is not sufficient reason to deny relief," Willis v. Watson Chapel Sch. Dist., 899 F.2d 745, 747 (8th Cir. 1990), as "we 'have repeatedly stressed that some uncertainty in damages should not work to bar a plaintiff from recovering from a proved wrongdoer,'" Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206, 1218 (8th Cir. 1990) (quoting Miley v. Oppenheimer & Co., 637 F.2d 318, 327 (5th Cir. 1981)).

## III.    CONCLUSION

We dismiss the preliminary injunction appeal as moot and affirm the rest of the judgment.

_____