[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11224

_____

D.C. Docket No. 3:17-cv-00348-HES-MCR

BENJAMIN MICHAEL DUBAY,

Plaintiff - Appellant,

WILLIAM B. DUBAY, LLC,

Plaintiff,

versus

STEPHEN KING,
MEDIA RIGHTS CAPITAL,
IMAGINE ENTERTAINMENT,
SONY PICTURES ENTERTAINMENT,
MARVEL ENTERTAINMENT, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 23, 2021)

Before NEWSOM and BRANCH, Circuit Judges.[*]

BRANCH, Circuit Judge:

In this copyright infringement action, Benjamin DuBay appeals the district court's grant of summary judgment to Stephen King, Media Rights Capital, Imagine Entertainment, Sony Pictures Entertainment, Marvel Entertainment, and Simon & Schuster (collectively, "King"). DuBay owns the copyright for a comic book series called *The Rook*, which recounted the adventures of Restin Dane. King is the author of *The Dark Tower* novel series, which features the character Roland Deschain as its protagonist. DuBay sued King for copyright infringement, alleging that Roland Deschain is a copy of Restin Dane. DuBay also sued the other defendants for contributory and vicarious copyright infringement for their respective roles in publishing King's novel series and adapting the book series into graphic novels and a motion picture. After careful consideration and with the benefit of oral argument, we affirm.

## I.   BACKGROUND

Because the parties are familiar with the facts of this case, we recount only those facts that are necessary to the disposition of this appeal.

---

[*] After Judge Martin heard this case at oral argument, facts arose that required her recusal. She did not, therefore, participate in this decision, which is rendered by a quorum. 28 U.S.C. § 46(d).

William DuBay and two other individuals created the comic book character Restin Dane, a.k.a. "The Rook," in the 1970s. On January 19, 1977, Dane first appeared in a Warren Publications horror/fantasy comic magazine entitled *Eerie* (vol. 82). In 1979, Warren Publications published a comic book series dedicated to *The Rook*. *The Rook* comic book series sold more than 5 million copies from 1977 to 1983.

As the evidence presented in the underlying proceeding established, Restin Dane is a wealthy scientist/inventor who lives in Arizona in a house shaped like a rook chess piece, which is known both as "Rook Castle" and "Rook Manor." Dane is a time traveler. He invents his own time machines (two resemble rook chess pieces) and "will go anywhere—any *time*—in search of adventure!" During his time-traveling adventures, Dane battles a variety of villains. Dane shares numerous attributes with other traditional heroes from comic books. He is handsome, masculine, courageous, and honorable. Dane is selfless and can always be counted on to "do the right thing." Dane does not engage in much introspection; his character arc remains constant throughout *The Rook* series. In short, Dane is a traditional comic book hero.

Stephen King is one of the best-known authors of the last half-century. Although King has written more than 50 works of fiction, this case involves what he describes as his "magnum opus"—*The Dark Tower* series. *The Dark Tower* is

comprised of eight novels and a novella, published between 1982 and 2012.  In or around April 1970, King began writing the first novel in the series, *The Gunslinger*.  First published in book form in 1982, *The Gunslinger* introduced Roland Deschain, the protagonist of *The Dark Tower* series.  Between 2007 and 2017, Marvel published licensed graphic novels that were based on *The Dark Tower* novels.  And in 2017, Media Rights Capital, Imagine Entertainment, and Sony Pictures Entertainment produced a motion picture adaptation of *The Dark Tower* series by the same name.

Throughout *The Dark Tower* series, Roland Deschain pursues an elusive structure called the Dark Tower—the linchpin of the space/time continuum—and a sorcerer called The Man in Black who serves The Crimson King.

Deschain is a complex character.  He is courageous and skilled with a gun, yet he lacks the idealism and morality of the traditional hero.  Deschain is a loner who does not value the lives of others and is, thus, willing to sacrifice those who get in his way.  Sometimes he appears heartless and uncompassionate; other times he displays an emotional and romantic side that allows him to engage in introspection and—ultimately—change his behavior.  Deschain's character arc throughout *The Dark Tower* series is marked by his search for self-knowledge and redemption.  Thus, Deschain's journey is not only external—chasing the Dark Tower and its sorcerer—but also internal.  Deschain's personal journey is difficult.

He undergoes illness, aging, amputation, and terrible, heart-rending loss. Deschain ultimately realizes that he cannot find redemption until he reflects on his life and admits the evil he has done. In short, Deschain is best described as an anti-hero.

Approximately 35 years after the first publication of *The Gunslinger*, Benjamin DuBay—the nephew of William DuBay[1]—sued King for copyright infringement. DuBay brought one count of copyright infringement against all defendants; one count of contributory copyright infringement against Media Rights Capital and Imagine Entertainment; and one count of vicarious copyright infringement against King, Sony Pictures Entertainment, Marvel Entertainment, and Simon & Schuster. DuBay alleged that the similarities between Deschain and Dane were so "shocking and extraordinary" that King must have copied DuBay's artistic expression.

During discovery, DuBay moved to compel the production of King's private journals from January to May 1977. King objected and argued that the journals were irrelevant, such production would invade his privacy, and that the request for the journals was overbroad. After conducting an *in camera* review of the relevant

---

[1] William DuBay died in April 2010. Benjamin DuBay claims that he received an assignment of William DuBay's ownership in *The Rook*'s copyright. The district court concluded that "the issue of ownership is far from clear." So it assumed without deciding that Benjamin DuBay owned a share in the relevant copyright. We also assume for purposes of this appeal that Benjamin DuBay owns an interest in the copyright.

journal entries, a magistrate judge denied DuBay's motion. DuBay did not file objections to the magistrate judge's ruling.

King eventually moved for summary judgment. He submitted a copy of the first novel, *The Gunslinger*; *The Dark Tower* motion picture; and excerpts from *The Dark Tower* graphic novels. Given the volume of the works at issue (totaling approximately 4,200 pages), King supported his motion with an expert report written by Michael Gale, which analyzed the issue of substantial similarity.[2] King also engaged Robin Furth to write character and plot summaries and analyze quotations from the works at issue.[3]

In his opposition to the motion for summary judgment, DuBay did not enter any additional works into the record. DuBay argued that King had access to *The Rook* and that the characters were substantially similar because they shared similar literary and visual elements. DuBay also argued that the "overall look and feel" of the characters was substantially similar.

---

[2] Gale is an accomplished writer (best known for co-authoring the 1985 motion picture *Back to the Future*) and has read extensive collections of science fiction in comics, including the works at issue in this case. Gale has also provided expert testimony in numerous other copyright cases.

[3] Furth was a research assistant to King and wrote *Stephen King's The Dark Tower: The Complete Concordance* as a writer's tool for King's use. Furth has also published more than 50 articles about *The Dark Tower* series, co-authored the Marvel graphic novels based on *The Dark Tower* series, appeared in documentaries and interviews related to the series, and served as a consultant for the 2017 motion picture and a forthcoming television franchise.

The district court concluded that the characters were not substantially similar and granted summary judgment to all defendants.

DuBay then moved for relief from judgment under Fed. R. Civ. P. 59(e), 60(b)(1), and 60(b)(3), urging the court to reconsider its decision for various reasons. The district court denied those motions. DuBay timely appealed.

## II. DISCUSSION

DuBay raises two issues on appeal. First, DuBay contends that the district court abused its discretion by failing to exclude Furth's character and plot summaries and Gale's expert report. Second, he contends that the district court erred when it found that the characters were not substantially similar.[4] We address each issue in turn.

A. Expert Evidence[5]

First, DuBay contends that the district court abused its discretion by failing to apply the *Daubert* standard to the evidence provided by Furth and Gale. *See*

---

[4] Dubay also challenges the district court's denial of his motion to compel production of King's journals. Dubay, however, abandoned this claim by failing to object below. *See* Fed. R. Civ. P. 72(a) (providing that when a magistrate judge decides a "pretrial matter not dispositive of a party's claim or defense," a "party may serve and file objections to the order within 14 days after being served with a copy" of the decision, and, "[a] party may not assign as error a defect in the order not timely objected to."). Because DuBay failed to object to the magistrate's denial of his motion to compel within 14 days, he "waived his right to appeal [that] order[] in this Court." *Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007). Accordingly, we will not consider DuBay's argument.

[5] We review decisions regarding the admissibility and reliability of expert testimony for abuse of discretion, and we will "not reverse an evidentiary decision of a district court unless the

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  DuBay argues that Furth's character and plot summaries were inadmissible because those summaries were unreliable and irrelevant.  According to DuBay, Furth's summaries were unreliable because she had a financial interest in the outcome of the case, and she misrepresented *The Dark Tower* series by claiming that Deschain does not travel through time.  Furthermore, he contends that the summaries were irrelevant because they covered elements that were not at issue and, therefore, did not assist the district court.  DuBay also argues that Gale's expert report was unreliable because Gale conceded that if Deschain were a traditional time traveler, the premise of his expert report would be completely undermined.

Expert testimony is admissible if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1338 (11th Cir. 2020) (explaining that *Daubert* requires courts to assess reliability by considering "(1) whether the expert's testimony can be and has been

---

ruling is manifestly erroneous[.]"  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quotation omitted).

tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community" (quotation omitted)).

The Federal Rules of Evidence separately permit a party to introduce "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006; *see also United States v. Francis*, 131 F.3d 1452, 1457 (11th Cir. 1997) ("Rule 1006 allows the district court to admit . . . summaries as evidence [when], in the court's discretion, it would be inconvenient or unnecessarily time-consuming to [review all of the writings, recordings, or photographs].").

In its summary judgment decision, the district court addressed Dubay's objections to the evidence submitted by Furth and Gale. As to Furth's summaries, the district court noted that the summaries were admissible under Rule 1006 given the sheer volume of the works at issue. Furthermore, the district court did not limit its review to the summaries, stating that it would "compare the characters for the purpose of the substantial similarity analysis using Furth's summaries[;] *Eerie*, volumes 82–85, 87–88 in their entirety[;] and the other materials lodged with the court." As to Gale's expert report, the district court emphasized that it "[was] not left to rely on expert opinion alone to determine whether the protected expressions

of the work [were] substantially similar" because "[t]o the extent the works at issue have been lodged with the [district court], the works themselves have been scrutinized."

As an initial matter, DuBay misapprehends the purposes of *Daubert* and Rule 1006. *Daubert* requires the district court "to act as a gatekeeper to insure that speculative and unreliable [expert] opinions do not reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). Similarly, "Rule 1006 allows the district court to admit . . . summaries as evidence [when], in the court's discretion, it would be inconvenient or unnecessarily time-consuming to [present all the evidence to] the jury." *United States v. Francis*, 131 F.3d 1452, 1457 (11th Cir. 1997). The purpose of both rules is to assist the ultimate fact finder. Here, however, the district court personally examined the works at issue that the parties submitted and determined that the case could not proceed to a jury because King was entitled to summary judgment. And because the case would not reach trial, there was no need for the district court to exercise its gatekeeping function.

In any event, DuBay's arguments are meritless. DuBay argues that Furth's summaries were unreliable and irrelevant and thus inadmissible under Rule 702 and *Daubert*. But Furth's summaries were independently admissible under Rule 1006. *See WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039–40 & n.7 (8th Cir. 2011) (explaining that evidence was admissible either as

10

expert testimony under Rule 702 or as summary testimony to prove content under Rule 1006). DuBay does not dispute that the works at issue are voluminous or that it would have been inconvenient for the district court to review all the relevant material. Thus, DuBay does not argue that Rule 1006 was inapplicable. To the extent DuBay contends that Furth's summaries were affected by bias, the district court correctly observed that Furth's potential bias goes to the weight the district court should give the summaries—not whether they are admissible. *See, e.g.*, *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1334 (11th Cir. 2014) (explaining that the "risk of bias . . . goes to the weight of . . . testimony, not its admissibility"). And because the district court independently examined the works the parties submitted, it was well positioned to determine what weight to give to Furth's summaries. In sum, DuBay has not shown that the district court abused its discretion by admitting Furth's summaries under Rule 1006.

DuBay's attempt to undermine Gale's expert report is similarly unpersuasive. DuBay maintains that Gale's expert report was not admissible under *Daubert* and Rule 702 because Gale conceded the unreliability of his own report. However, Gale made no such concession. DuBay's counsel asked Gale a hypothetical question: "If Roland Deschain is a time traveler in the traditional sense, then wouldn't that undermine the entire basis of your opinion?" Gale never entertained the hypothetical and repeatedly insisted that Deschain was "not a

11

traditional time traveler." Thus, DuBay has not shown that the district court abused its discretion by failing to exclude Gale's expert report.[6]

B. Substantial Similarity[7]

Next, DuBay argues that the district court erred when it granted summary judgment to King because a reasonable jury could conclude that the characters of Dane and Deschain are substantially similar. As DuBay sees it, the characters are substantially similar because they (1) have similar names, (2) interact with towers that are integral to time travel, (3) have bird companions, (4) are marked by knightly characteristics, (5) travel back in time to save a young boy who becomes a gunslinger, (6) wear Western garb, (7) survive a fictionalized Alamo, and (8) use

---

[6] DuBay further challenges the district court's decision to consider the expert report and the summaries by arguing that the district court abused its discretion by not affording him relief under Federal Rules of Civil Procedure 59 and 60. These motions purported to identify further evidence that Furth's summaries were biased and unreliable and that Gale lacked the requisite expertise. On appeal, DuBay asserts—in two sentences—that the district court abused its discretion because it did not apply the *Daubert* standards for relevance or reliability to Furth's summaries. Apart from this conclusory assertion, DuBay fails to "advanc[e] any arguments or cit[e] any authorities to establish" that the district court abused its discretion when it denied his post-trial motions. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." *Id.* (quotation omitted). Accordingly, we will not consider DuBay's argument.

[7] We review "a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). "Summary judgment is appropriate [when] there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1271 (11th Cir. 2001) (quotation omitted). We "draw all inferences and review all evidence in the light most favorable to the non-moving party." *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1099 (11th Cir. 2019) (quotation omitted and alterations adopted).

12

knives.  He also contends that Dane was the first character that combined these elements to create a distinctive character that King later copied.

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  "Because the Copyright Act protects 'original works of authorship,' the '*sine qua non* of copyright is originality.'"  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (citation omitted) (first quoting 17 U.S.C. § 102(a) and then quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).  Thus, non-original ideas and material, such as *scènes à faire*, are not copyrightable.  *Id.*  *Scènes à faire* are "sequences of events which necessarily follow from a common theme, or incidents, characters, or settings that are indispensable or standard in the treatment of a given topic."  *Peter Letterese & Assocs., Inc. v. World Inst. Of Scientology Enters.*, 533 F.3d 1287, 1302 (11th Cir. 2008) (citation and quotation marks omitted).

To establish a copyright infringement claim, a plaintiff must show two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns*, 499 U.S. at 361.  When, as is the case here, there is no "direct evidence" of copyright infringement, a plaintiff must prove that: (1) "the defendant had access to the plaintiff's work[,]" and

13

(2) "the defendant's work is substantially similar to the plaintiff's protected expression." *Beal*, 20 F.3d at 459.

Like the district court, we assume that DuBay has proved that King had access to *The Rook*, and we will focus our analysis on substantial similarity.[8] Substantial similarity exists when "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008) (quotation omitted). But because a work may contain uncopyrightable elements, our task is to "determine[] both whether the similarities between the works are substantial from the point of view of the lay observer and whether those similarities involve copyrightable material." *Id.* (quotation omitted) (alteration adopted).

We begin by narrowing down the alleged similarities to elements that are protected by copyright. First, we agree with the district court that character names do not merit copyright protection. *CMM Cable Rep, Inc. v. Ocean Coast Prop., Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996) (explaining that mere words and short

---

[8] The district court concluded that it was unnecessary to decide the issue of access given the lack of substantial similarity between the characters. On appeal, the parties disagree about whether the evidence establishes that King had access to *The Rook*. We note that if a plaintiff cannot establish access, that plaintiff must meet a higher standard of "demonstrating that the works are so *strikingly similar* as to preclude the possibility of independent creation." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999) (emphasis added). On this record, we decline to decide that issue in the first instance. Therefore, we will assume that DuBay has demonstrated access and analyze whether the characters are substantially similar.

14

phrases, even if they occur in a copyrighted work, do not themselves enjoy protection against copying); *cf.* 37 C.F.R. § 202.1(a) (excepting from copyright protection "[w]ords and short phrases such as names, titles, and slogans").

Second, we agree with the district court that there are certain similarities at issue in this appeal that lack originality. Even assuming that the characters share some similarities concerning their knightly heritage, travel to different times and parallel worlds, Western attire, fictionalized Alamo histories, and knife-wielding, these similarities are *scènes à faire* that are too general to merit copyright protection. *See Peter Letterese*, 533 F.3d at 1302; *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014) ("[T]he doctrine of '*scènes-à-faire*' teaches that elements of a work that are 'indispensable, or at least standard, in the treatment of a given topic'—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection." (quotation omitted)).

Finally, we turn to what remains: the alleged similarities between the characters' relationship to towers and tower imagery, the presence of bird companions, and the fact that both characters save a young boy from a different time. Although these elements are similar in the abstract, they are not substantially similar because the elements are portrayed in different ways. To begin, the towers serve very different functions for each character. Dane resides in a house that resembles a rook chess piece and builds time machines with a similar appearance.

15

By contrast, the Dark Tower is neither Deschain's home nor a time machine. Deschain is on a quest to *find* the Dark Tower, which is the nexus that ties different worlds and dimensions together.

Next, the characters interact with bird companions and imagery in different ways. Dane is associated with bird symbolism because he wears a belt buckle with the image of a rook bird and, on at least one occasion, puts on a pair of rook wings and flies into battle alongside a rook bird. Deschain, on the other hand, encounters a talking crow and briefly allies with a fighting hawk before sacrificing the hawk to serve his own ends. Unlike Dane, who only associates with bird allies, Deschain symbolically becomes the hawk upon its demise.

Finally, the characters' interactions with young male companions are dramatically different. Dane travels back in time to the Battle of the Alamo and, by chance, saves the life of a young boy who turns out to be Dane's great-great-grandfather. Deschain also saves and bonds with a young boy, but Deschain later betrays and sacrifices the boy for the sake of his quest. Even if these elements bear some similarity, the portrayals of these elements are distinguishable. Given these distinctive presentations, "no reasonable jury upon proper instruction would find that the two works are substantially similar." *Beal*, 20 F.3d at 459.

In addition to asking us to analyze substantial similarity by comparing each element side by side, DuBay urges us to consider whether the characters'

16

combinations of those elements are substantially similar. DuBay submits that Dane is a unique expression of those combined elements and that Deschain is a copy of that expression.

We have recognized the pitfalls of scrutinizing each alleged similarity in isolation. *See Beal*, 20 F.3d at 460 ("The district court correctly noted that . . . lists [of similarities] are inherently subjective and unreliable, particularly where the list contains random similarities. Many such similarities could be found in very dissimilar works." (citation and quotation marks omitted)); *Leigh v. Warner Bros.*, 212 F.3d 1210, 1215 (11th Cir. 2000) ("This circuit has noted . . . that lists of similarities between works are inherently subjective and unreliable."). But by asking us to take a broader view of the characters, DuBay hurts rather than helps his case because this more holistic analysis further highlights the distinctiveness of each character.

Dane possesses many attributes of a traditional comic book hero. He is a courageous gunslinger and an honorable man. He always does the "right thing." He travels through time and fights a variety of villains. And Dane's character arc remains constant throughout *The Rook* series. Deschain, however, is far more complex. He is courageous and skilled with a gun yet lacks the idealism and morality integrity of a traditional hero. He uses and sacrifices others out of self-interest. And Deschain is on an external quest for the Dark Tower and The Man in

17

Black and an internal quest for self-knowledge and redemption.  Deschain is best described as a troubled anti-hero.  As a result, these characters are surrounded by different stories and contexts, thereby rendering any similarities superficial.

For these reasons, and those explained in the district court's thorough opinion, "no reasonable jury upon proper instruction would find that the two works are substantially similar." *Beal*, 20 F.3d at 459.  Accordingly, the district court did not err by granting King's motion for summary judgment.[9]

### III. CONCLUSION

For the reasons explained, we affirm the district court in full.

**AFFIRMED.**

---

[9] Because there was no direct copyright infringement, DuBay's contributory and vicarious copyright infringement claims fail.  *See Peter Letterese &Assocs., Inc. v. World Inst. Of Scientology Enter.*, 533 F.3d 1287, 1298 n.11 (11th Cir. 2008) (explaining that there "can be no contributory infringement without a direct infringement" (quotation omitted)); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) ("[T]o prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party.").